J-S27003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN B. POWELL | : | |
| | : | |
| Appellant | : | No. 2179 EDA 2018 |

Appeal from the Judgment of Sentence Entered May 10, 2011
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0016044-2010

BEFORE:   SHOGAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.:                          Filed: August 20, 2020

Appellant, Kevin B. Powell, appeals *nunc pro tunc* from the judgment of

sentence entered on May 10, 2011, in the Philadelphia County Court of

Common Pleas.  After review, we affirm.

In its opinion filed pursuant to Pa.R.A.P. 1925(a), the trial court

summarized the history of this case as follows:

> The incidents in this case took place on August 17, 2009, at
> approximately 1:30 am. [N.T., 5/10/11, at 5]. Officer Phillip
> Cherry testified at trial to the following facts.
>
> In the early morning hours of August 17, 2009, Officer
> Cherry was on duty when a University City security ambassador
> flagged him down to attend to an accident that had occurred at
> the intersection of 43rd Street and Baltimore Avenue in the city
> and county of Philadelphia. *Id.* Appellant was the confirmed owner
> and operator of the gold Toyota involved in the accident. *Id.* at 8.
> When Philadelphia Police Officer Cherry arrived at the scene, he

---

[*] Former Justice specially assigned to the Superior Court.

approached Appellant, who exhibited signs of intoxication, including slurred speech, unsteady gait, and a strong odor of alcohol. *Id.* Officer Cherry, highly experienced in accident investigations, determined Appellant would be unable to safely operate a motor vehicle in his current state. *Id.* at 33-34. Appellant admitted to consuming "a few beers" prior to operating his vehicle; accordingly, Officer Cherry placed Appellant under arrest for suspicion of driving under the influence. *Id.* at 8, 16.

Later that morning, at approximately 2:23 a.m., Appellant was brought to Officer Chapman of the Accident Investigation Division. *Id.* at 33. According to stipulated testimony at trial, [Officer] Chapman observed sluggish movements, wobbly gait, red and bloodshot eyes, slurred speech, and the strong odor of alcohol that could be detected from up to two feet away. *Id.* …

Trial Court Opinion, 10/15/19, at 3.

On May 10, 2011, [Appellant] waived his right to a jury and proceeded to trial before this court. During the waiver trial, this court found Appellant guilty of driving under the influence of alcohol [("DUI") in violation of 75 Pa.C.S § 3802(a)(1)]. Appellant was sentenced to six (6) months of probation and a three hundred ($300) dollar fine. Additionally, Appellant was ordered by this court to attend alcohol safety school.

On May 20, 2011, Appellant filed a post-sentence motion and on June 15, 2011, Appellant's post-sentence motion w[a]s denied. On July 15, 2011, Appellant filed a timely notice of appeal from his May 10, 2011 judgement of sentence.[1] On October 4, 2011, this [c]ourt ordered Appellant to file a concise Statement of Errors Complained of an Appeal pursuant to Pa.R.A.P[.] 1925(b) on or before November 2, 2011. On November 2, 2011, counsel for Appellant filed a Statement of Matters Complained on Appeal. This court filed an opinion … on June 29, 2012. On September 11, 2012, [the] appeal was dismissed for failure to file briefs. [Order, 9/11/12.]

Trial Court Opinion, 10/15/19, at 1-2.

_____

[1] Appellant's initial appeal was docketed at Superior Court docket number 1856 EDA 2011.

Following this Court's dismissal of Appellant's direct appeal on September 11, 2012, Appellant's judgment of sentence became final thirty days later on October 11, 2012, pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. *See* 42 Pa.C.S. § 9545(b)(3) (stating that a judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review); *see also* Pa.R.A.P. 1113(a) (directing that "a petition for allowance of appeal shall be filed with the Prothonotary of the Supreme Court within 30 days of the entry of the order of the Superior Court sought to be reviewed"); *see also Commonwealth v. Alcorn*, 703 A.2d 1054, 1056 (Pa. Super. 1997) (noting that a judgment of sentence became final under the PCRA after this Court dismissed the petitioner's direct appeal for failure to file a brief, and the petitioner failed to seek further review in the Supreme Court). Thus, Appellant had one year from October 11, 2012, in which to file a timely PCRA petition. 42 Pa.C.S. § 9545(b)(1). Appellant filed a timely PCRA petition on October 11, 2013.

In his PCRA petition, Appellant sought the reinstatement of his direct appeal rights. PCRA Petition, 10/11/13, at ¶8. Inexplicably, no action was taken on the petition for more than four years.

The docket entries reflect that on July 19, 2018, the trial court entered an order reinstating Appellant's direct appeal rights *nunc pro tunc*. We note that this order is not contained in the certified record. However, Appellant, the Commonwealth, and the trial court mention the order and treat it as

properly filed,[2] and neither the trial court nor the parties dispute its entry or existence. In the interest of judicial economy, because the docket entries reflect it, and no one disputes that there was an order filed on July 19, 2018, that reinstated Appellant's appellate rights, we deem the order properly filed, and we proceed with our disposition.

On July 19, 2018, the same day that the PCRA court reinstated Appellant's appellate rights, Appellant filed a *nunc pro tunc* direct appeal to this Court. Notice of Appeal, 7/19/18. On October 16, 2018, the trial court directed Appellant to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on or before November 14, 2018. On November 14, 2018, Appellant filed a timely Pa.R.A.P. 1925(b) statement, and the trial court filed an opinion on October 15, 2019.[3]

At the outset, the Commonwealth requests that we remand this matter to the trial court to determine if Appellant had completed his sentence when he pursued relief under the PCRA. Commonwealth's Brief at 9. The Commonwealth avers that if Appellant was no longer serving his sentence, he was not eligible for relief under the PCRA, and the PCRA court lacked

_____

[2] Appellant's Notice of Appeal, 7/19/18, at n.1; Commonwealth's Brief at 6; Trial Court Opinion, 10/15/19, at 1.

[3] On December 18, 2019, we dismissed Appellant's appeal for failure to file a brief. On January 2, 2020, Appellant filed an application for reconsideration and attached a copy of his appellate brief. On January 10, 2020, we granted Appellant's motion for reconsideration, vacated the order dismissing his appeal, and accepted Appellant's appellate brief.

jurisdiction to reinstate Appellant's direct appeal rights *nunc pro tunc*. **Id.** at 9-10 (citing **Commonwealth v. Turner**, 80 A.3d 754, 761-762 (Pa. 2013), and 42 Pa.C.S. § 9543(a)(1)(i)).

The Commonwealth is correct insofar as it asserts that in order to be eligible for relief under the PCRA, a petitioner must be serving a sentence of imprisonment, probation, or parole for the crime. **Turner**, 80 A.3d at 762; 42 Pa.C.S. § 9543(a)(1)(i)). If a petitioner is not currently serving a sentence, he is not eligible for PCRA relief. **Turner**, 80 A.3d at 762. However, PCRA eligibility and jurisdiction are not synonymous concepts.

This Court has explained that "currently serving a sentence" is an eligibility-for-relief factor; it is not a jurisdictional bar that a petitioner must overcome before the PCRA court has jurisdiction to grant relief. **Commonwealth v. Fields**, 197 A.3d 1217, 1223 (Pa. Super. 2018) (*en banc*).[4] Herein, Appellant filed a timely PCRA petition seeking reinstatement of his direct appeal rights, and the PCRA court granted the petition on July 19, 2018. The Commonwealth did not appeal the PCRA court's order reinstating Appellant's direct appeal rights *nunc pro tunc*, which was a final and appealable order. **See** Pa.R.Crim.P. 910 ("An order granting, denying

---

[4] The opinion in support of affirmance in **Fields** was a plurality decision. However, all of the judges agreed that Section 9543 pertains to the PCRA's **eligibility** requirements and not its **jurisdictional** requirements. **Fields**, 197 A.3d at 1223, 1225, and 1229.

dismissing or otherwise disposing of a petition for post-conviction collateral relief shall constitute a final order for purposes of appeal."). Thus, Appellant's eligibility for PCRA relief at the time of the July 19, 2018 order is not properly before us. *See Commonwealth v. Robinson*, 837 A.2d 1157, 1162 (Pa. 2003) (explaining that if left unchallenged, a PCRA court's order granting relief becomes final thirty days after its entry and that neither the PCRA court nor an appellate court retains jurisdiction "to tinker with that final judgment"); *see also Commonwealth v. Williams*, 106 A.3d 583, 587 (Pa. 2014) (discussing that the failure to file a timely appeal from a final order generally divests the appellate court of its jurisdiction to hear the appeal). Accordingly, we decline the Commonwealth's invitation to remand to determine whether Appellant was eligible for PCRA relief when the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc* in July of 2018.

On appeal, Appellant raises the following issues for this Court's consideration:

> 1. Was the evidence insufficient where the "safety" standard was that "people cannot drink alcohol and safely operate a vehicle"?
>
> 2. Was the verdict against the weight of the evidence where none of the police officer's notes or reports mentioned an alleged admission to operating the vehicle, yet at trial the police officer claimed to have heard such an admission?
>
> 3. Did the court err, in violation of the hearsay rules and the confrontation clauses, in admitting out-of-court statements from another about who operated the vehicle?

Appellant's Brief at 2.[5]

In Appellant's first issue, he asserts that the evidence was insufficient to prove that he was guilty of DUI. Appellant avers that his conviction was based on Officer Cherry's belief that imbibing any alcohol renders a driver incapable of safe driving. Appellant's Brief at 5. We disagree with Appellant's summarization and conclusion concerning the evidence.

Our standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011).

---

[5] The record reflects that Appellant's Pa.R.A.P. 1925(b) statement contained a more detailed recitation of the errors Appellant complains of on appeal. Although Appellant's statement of questions presented in his brief is not as precise as his Pa.R.A.P. 1925(b) statement, we conclude that the vague language from the statement of questions presented does not hamper our appellate review.

Section 3802 of the Motor Vehicle Code provides, in relevant part, as follows:

**(a) General impairment.--**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S § 3802(a)(1).  "The term 'operate' requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion." *Commonwealth v. Johnson*, 833 A.2d 260, 263 (Pa. Super. 2003).  A determination of actual physical control of a vehicle is based upon the totality of the circumstances.  *Commonwealth v. Williams*, 871 A.2d 254, 259 (Pa. Super. 2005) (internal citations omitted).  The Commonwealth can prove that a defendant was driving, operating, or in actual physical control of a motor vehicle through wholly circumstantial evidence.  *Id.*

The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol[;] and slurred speech. … The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony.

*Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009).

- 8 -

Additionally, "non-expert testimony is admissible to prove intoxication where such testimony is based upon the witness'[s] observation of the defendant's acts and speech[,] and where the witness can opine as to whether the defendant was drunk." *Commonwealth v. Salter*, 121 A.3d 987, 996 (Pa. Super. 2015) (citation omitted). Moreover:

> The Commonwealth can establish that a defendant had "actual physical control" of a vehicle through wholly circumstantial evidence. [*Commonwealth v. Williams*, 871 A.2d 254, 259 (Pa. Super. 2005).] *See also Commonwealth v. Johnson*, 833 A.2d 260 (Pa. Super. 2003) (collecting cases standing for proposition that Commonwealth may establish by totality of circumstances, defendant was driving, operating or in actual physical control of motor vehicle). Furthermore, "a police officer may utilize both his experience and personal observations to render an opinion as to whether a person is intoxicated." *Commonwealth v. Kelley*, 438 Pa.Super. 289, 652 A.2d 378, 382 (1994) (citing *Commonwealth v. Bowser*, 425 Pa.Super. 24, 624 A.2d 125 (1993)).

*Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008).

As noted, Appellant asserts that the trial court convicted him based on Officer Cherry's statement that imbibing any amount of alcohol renders a driver incapable of safe driving. Appellant's Brief at 5-6. The testimony to which Appellant refers occurred during Appellant's counsel's cross-examination of Officer Cherry:

Q   And you would agree that people could drink alcohol and operate a vehicle?

A   Not safely, no.

Q   So you can't have two beers or three beers in a four-hour period and drive a car? No? Is that a no?

THE COURT: I need a verbal answer.

THE WITNESS:     No.

[Appellant's Counsel] MR. KELLY:

Q      So you agree that drinking alcohol in Pennsylvania if you're over 21 is legal?

A      Yeah, drinking, yes.

Q      So my question before was: You would agree that people can drink alcohol, two or three beers at a Phillies game or an event, and three hours later drive a vehicle, right?

A      I don't know about three hours later but I mean, I wouldn't say that it's safe to drive a vehicle after drinking.

Q      So in your opinion, you can't even drink alcohol and get behind a wheel at any time, right, two, three, four hours, right; that's fair?

A      I don't know, I guess; no, yes, no, maybe so, I don't know.

Q      So we agree that you don't think people should drink alcohol and then at any time in a two-, three-hour period should drive; is that a fair statement?

A      Yes.

N.T., 5/10/11, at 22-23.  After review, we disagree with Appellant's conclusion that this statement was the only evidence upon which the trial court relied.

The testimony at trial reveals that Officer Phillip Cherry responded to an automobile accident on August 9, 2009.  N.T., 5/10/11, at 5.  When Officer Cherry arrived at the scene of the accident, Appellant admitted to consuming alcohol and owning and driving the gold Toyota involved in the accident.  *Id.* at 8-9.  Officer Cherry testified that Appellant appeared to be inebriated.  *Id.*

at 13. Specifically, Officer Cherry testified that Appellant was unsteady on his feet, slurred his speech, swayed back and forth, and emitted a strong odor of alcohol. *Id.* at 8, 13. Officer Cherry concluded that Appellant was under the influence to the extent that he was incapable of safe driving. *Id.* at 14. Additionally, the parties stipulated that if the other responding police officer, Officer Chapman, had been called to testify, he would have testified that Appellant made sluggish movements, had a wobbly gait, bloodshot eyes, slurred lethargic speech, emitted a strong odor of alcohol at two feet away, and was incapable of safe driving. *Id.* at 33-34.

Contrary to Appellant's averment, there is no evidence that the trial court reached its verdict based on Officer Cherry's isolated response to counsel's hypothetical questions on cross-examination. Rather, the trial court concluded that Officers Cherry and Chapman were experienced and trained in identifying intoxicated drivers. Trial Court Opinion, 10/15/19, at 4-5. Indeed, the trial court credited Officer Cherry's testimony as a whole, and based on all of the evidence presented and stipulated to by the parties, the trial court concluded that Appellant had consumed alcohol to an extent that rendered him incapable of safe driving beyond a reasonable doubt. *Id.* at 4. We reiterate that as the finder of fact, the trial court was free to believe some, all, or none of the evidence presented at trial. *Hansley*, 24 A.3d at 416. In light of our well-settled standard of review, we conclude that the evidence was sufficient to prove that Appellant was guilty of DUI. *Segida*, 985 A.2d at 879;

*Salter*, 121 A.3d at 996; and *Williams*, 941 A.2d at 27. Accordingly, no relief is due.

In his second issue, Appellant avers that Officer Cherry's testimony contradicted the notes he took at the scene of the accident. Appellant's Brief at 7. Appellant claims the verdict is against the weight of the evidence and shocks the conscience. *Id.*

Our standard of review is well settled:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. The Pennsylvania Supreme Court has explained that "appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." To grant a new trial on the basis that the verdict is against the weight of the evidence, this Court has explained that "the evidence must be 'so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'"

> This Court shall not undertake to reassess credibility of witnesses, as it is well settled that we cannot substitute our judgment for that of the trier of fact. Further, the finder of fact was free to believe the Commonwealth's witnesses and to disbelieve the witness for the Appellant. *See Commonwealth v. Griscavage*, 512 Pa. 540, 517 A.2d 1256 (1986) (the finder of fact is free to believe all, none, or part of the testimony presented at trial).

*Commonwealth v. Chine*, 40 A.3d 1239, 1243-1244 (Pa. Super. 2012) (some internal citations omitted). Moreover, a challenge based on the weight of the evidence must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. *Commonwealth v. Thompson*, 93 A.3d 478, 490 (Pa. Super. 2014); Pa.R.Crim.P. 607(A)(1)-(3).

The record reflects that Appellant filed a post-sentence motion. Correspondence, 5/23/11. However, this motion is not in the record. It is Appellant's responsibility to ensure that this Court has the complete record necessary to properly review a claim. *Commonwealth v. Kennedy*, 151 A.3d 1117, 1127 (Pa. Super. 2016). Because we are without the ability to discern whether Appellant preserved a challenge to the weight of the evidence based on the credibility of Officer Cherry's testimony, we could deem it waived. *Id.*

Nevertheless, the trial court filed an order denying Appellant's post-sentence motion. Order, 6/15/11; *see also* Trial Court Opinion, 10/15/19, at 2 (discussing the June 15, 2011 order denying Appellant's post-sentence motion). Affording Appellant the benefit of the doubt that this issue was preserved relative to Officer Cherry's testimony, we do not find that the verdict shocks the conscience. The trial court, sitting as the finder of fact, was free to believe the Commonwealth's witnesses. *Chine*, 40 A.3d at 1244. Indeed, the trial court credited the testimony of Officer Cherry and concluded that Appellant's challenge to the weight of the evidence was meritless. Trial Court Opinion, 10/15/19, at 6. After review, we discern no basis upon which to conclude that the trial court abused its discretion, and we conclude that no relief is due.

In his final issue, Appellant asserts that the trial court abused its discretion when it admitted and relied upon hearsay in concluding that

Appellant was the driver involved in the automobile accident. Appellant's Brief at 2, 4, 7-8. Appellant alleges the hearsay was admitted over his objection. *Id.* at 4 (citing N.T., 5/11/10, at 5, 7, 25-27, and 29-31).

> Our standard of review is well settled:
>
> The admissibility of evidence is a matter addressed to the sound discretion of the trial court and ... an appellate court may only reverse upon a showing that the trial court abused its discretion. As abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice manifest unreasonableness, or misapplication of law.

*Commonwealth v. Cox*, 115 A.3d 333, 336 (Pa. Super. 2015) (internal citations and quotation marks omitted). "Hearsay is an out-of-court statement offered for the truth of the matter asserted. Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." *Commonwealth v. McGriff*, 160 A.3d 863, 873 n.6 (Pa. Super. 2017) (citations omitted).

After review, we conclude that Appellant's issue is meritless. The record does not support the claim that the trial court admitted hearsay over Appellant's objection. Additionally, there is no indication that trial court relied on hearsay in reaching its verdict.

With respect to Appellant's first allegation of hearsay, the record reflects that Appellant objected to Officer Cherry stating that University City security guards flagged him down at the scene of the accident. N.T., 5/11/10, at 5. The trial court sustained Appellant's objection and ruled that Officer Cherry could not testify to anything the security guards said. *Id.* Officer Cherry

complied with the trial court's ruling and never testified to any statements made by the security guards.

Next, Appellant objected when Officer Cherry stated, "Several people on the scene [were] telling me that there was an accident …." N.T., 5/11/10, at 7. However, this statement did not identify Appellant or any other person. The trial court specified that it accepted Officer Cherry's statement only to the extent that "there was an accident." *Id.* No hearsay was admitted over Appellant's objection that identified Appellant as the driver.

Appellant also objected when Officer Cherry referred to notations in his paperwork. N.T., 5/11/10, at 25-27. However, the record reveals that the trial court sustained Appellant's objection, and Officer Cherry did not mention the contents of his notes. *Id.* at 27.

Finally, Appellant objected when Officer Cherry referred to a police report and said, "As police investigated the driver of the striking vehicle, [Appellant], police noticed a strong odor of alcohol coming from his person." N.T., 5/11/10, at 29. Nevertheless, the trial court concluded there was no hearsay and that Officer Cherry testified to his own observations: "My impression is [Officer Cherry] got it from his own observation, but if there's any hearsay, trust me, I won't consider it." *Id.* at 30. We note that in a nonjury trial, the trial judge is presumed to have disregarded prejudicial evidence such as inadmissible hearsay testimony. *Commonwealth v. Dent*, 837 A.2d 571, 582 (Pa. Super. 2003). Moreover, any reference to Appellant

as the driver was cumulative of Officer Cherry's earlier testimony wherein he relayed that Appellant admitted being the driver. N.T., 5/11/10, at 9. After careful review, we conclude that the record fails to support Appellant's allegation that the trial court admitted hearsay and relied on hearsay in reaching its verdict. Accordingly, we conclude that final issue is without merit.

For the reasons set forth above, we conclude that no relief is due. Accordingly, we affirm Appellant's judgement of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/20