J-A13028-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF MELVEL W. SNITOW, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: SANDRA A. SNITOW, EXECUTRIX OF THE ESTATE OF MELVEL W. SNITOW, DECEASED | : : : | |
| | : | |
| | : | |
| | : | No. 1688 EDA 2019 |

Appeal from the Order Entered May 3, 2019
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2008-X0350

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:            **FILED SEPTEMBER 15, 2020**

Sandra A. Snitow ("Sandra"), executrix under the will of Melvel W. Snitow, Deceased ("Decedent"), appeals from the order of the Court of Common Pleas of Montgomery County, Orphans' Court Division, confirming the accounts of her administration of the estate.  Upon careful review, we dismiss the appeal.

The Honorable Lois E. Murphy set forth the relevant factual and procedural history of this matter as follows:

[Decedent] died on December 7, 2007, survived by his son, [appellee] Howard [Snitow ("Howard")], and his daughter, Sandra.  His will was admitted to probate and letters testamentary were granted to Howard and Sandra on January 30, 2008.  The will poured the residuary estate into a trust that was executed in 1991[, which] provided for the assets to be distributed equally to Howard and Sandra.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The litigation between the siblings began in January 2009 and has continued unabated since then. A summary of some[,] but not all[,] of the filings by the parties follows.

Howard was directed to file an account in April of 2009. This account, which was filed in August of 2009[,] was eventually returned unaudited. In 2011, the executors began battling over the sale of [Decedent's] residence in Merion and over the amount of money owed by Howard to Shinobe Capital, Inc., a corporation wholly-owned by [Decedent]. In December of 2011, the [c]ourt determined that Howard owed the estate $71,949.92, and removed him as co-executor. In 2013, Howard sought unsuccessfully to remove Sandra as the fiduciary, alleging that she was wasting estate assets in allowing [Decedent's] residence to deteriorate and remain unsold. In 2014, Howard brought a petition seeking, *inter alia*, to compel Sandra to accept a certain offer on the real estate. Sandra was then directed to file an account[,] which she did in June of 2014. Howard then filed a petition to be paid for his interest in [Decedent's] residence or for authority to sell it himself.

In a new line of attack[1] launched in April of 2015, Sandra filed a petition to have Howard account for the assets and income of Squire Service, Inc., 52% of the shares of which had been owned by [Decedent] and the balance by Howard. Sandra alleged that a letter dated July 11, 2007, wherein [Decedent] purportedly gave his shares to Howard, was obtained by Howard through fraud or undue influence. Sandra's request for an account from Howard was eventually dismissed as untimely.

[1] In addition to the proceedings in this [c]ourt, there was litigation between Howard and Sandra in the civil division of the Philadelphia Court of Common Pleas relating to other businesses in which [Decedent] and his children had interests.

Sandra filed her amended first account on August 5, 2015, which replaced the first account filed in 2014. Howard filed objections and the parties then embarked on a period of discovery[,] which was, as was expected, highly contentious. In June of 2016, Howard filed another petition seeking to compel Sandra to pay over his share of the value of the house and also to file [Decedent's] and the estate's tax returns. The house was finally sold in November of 2016.

> Sandra renewed her request that Howard be required to account for the transactions involving Squire Service, Inc. By orders dated November 6 and 15, 2017, the undersigned determined that the Orphans' Court did not have jurisdiction over the business dealings of Squire Service[, Inc.]; however, because it was alleged that [D]ecedent's estate had an interest in Squire Service, Inc., the [c]ourt directed Howard to provide Sandra with copies of Squire Service[, Inc.'s] tax returns. The [c]ourt also scheduled the issue of the validity or invalidity of the alleged gift by [D]ecedent of his interest in the corporation to Howard to be considered at the time of the hearing on Howard's objections to Sandra's amended account. On November 9, 2017, Sandra filed her supplemental account.

Adjudication, 5/3/19, at 2-4 (footnote omitted).

Judge Murphy held hearings on Howard's objections to the account and the validity of the alleged gift of Decedent's interest in Squire Services, Inc., on May 8, 9, and 10, 2018. In its adjudication dated May 3, 2019, the court imposed upon Sandra a surcharge in the amount of $68,000 for her dilatory conduct in consummating the sale of Decedent's residence; allowed and denied various out-of-pocket expenditures claimed by Sandra in her account; and concluded that the purported gift to Howard of Decedent's 52% interest in Squire Service, Inc., was invalid. Sandra filed a motion for reconsideration, which the court granted in part and denied in part.[1] This timely appeal follows, in which Sandra raises the following claims for our review:

> 1. Did not the [Orphans' Court] commit legal error by its failure to order [Howard] to account and pay over [D]ecedent's [52%]

---

[1] In granting reconsideration, the court approved a revised valuation of Decedent's interest in Squire Service, Inc., and adjusted by $400 the surcharge against Sandra for delay in selling Decedent's residence

- 3 -

ownership of the value and earnings of Squire Service, Inc., with interest, to [Sandra]?

2. Did not the [Orphans' Court] commit legal error by its failure to award punitive damages as a result of [Howard's] concealment of transfer and conversion of Decedent's 52% interest in Squire Service, Inc.[,] to [Howard], his failure to file a tax return in order to release $50,000.00 held in escrow, and his concealment of a secret autopsy performed upon [D]ecedent?

3. Did not the [Orphans' Court] commit legal error by removing [Howard] as co-executor on the court's own motion[,] stating "[i]t is the only way to protect the assets of the estate," and yet allowing him to continue as co-trustee with respect to the assets of the former revocable trust that became irrevocable upon the settlor's death?

4. Did not the [Orphans' Court] commit legal error by dismissing [Sandra's] petition to require [Howard] to account for breach of his fiduciary duties and for other relief in accordance [with] 20 Pa.C.S.A. [§§] 7133 and 3317 [(]duty of co-trustee & co-executor to proceed against other co-trustee/co-executor[)]?

5. Did not the [Orphans' Court] commit legal error by dismissing [Sandra's] petition to require [Howard] to account for breach of his fiduciary duties and for other relief in accordance [with] 20 Pa.C.S.A. [§] 3317, calling it "untimely" when the [Orphans' Court] sits in equity and [Sandra] had consistently asserted [Howard's] wrongdoing as well as his "unclean hands"?

6. Did not the [Orphans' Court] abuse its discretion and wrongfully surcharge [Sandra] by failing to weigh and consider the animus of [Howard] following a meeting in Orphans' Court attended by [Sandra], counsel Jack Bernard, Dr. Melman, Mrs. Melman, realtor Renee Hill ("Hill"), and Mr. Gregory, broker's counsel, but from which [Howard] was excluded, leading to a sale by [Sandra] to Melmans at the highest price offered until that time. And yet, [Howard,] a 50% beneficiary of the estate[,] yelled in everyone's earshot to the Melmans that they overpaid $25,000.00?

7. Did not the [Orphans' Court] abuse its discretion and wrongly surcharge [Sandra] by failing to weigh and consider the conflict of interest and animus of Hill, who entered into a dual agency with [Sandra] and Dr. Melman, and lost her commissions?

8. Did not the [Orphans' Court] commit legal error by its failure to require [Howard] to comply with Local Orphans' Court Rule 2.7A(b), that required [Howard's] attorney to file with the Clerk and serve upon the attorney for the accountant a written statement of contentions with all material facts relied upon at least 20 days prior to the hearing?

9. Did not the [Orphans' Court] abuse its discretion in refusing to allow [Sandra] to place in evidence her loans that benefitted the estate[,] and by reducing her commission?

10. Did not the [Orphans' Court] commit legal error by imposing a surcharge upon [Sandra] for attorneys' fees when it was necessary to defend more than seventeen petitions brought against her by [Howard], none of which [was] successful, and when she alone enhanced the assets of the estate, while [Howard's] actions diminished it?

11. Did not the [Orphans' Court] commit legal error by failure to order [Howard] to complete federal and state tax returns, K-1 information returns for all businesses and investments [Howard] ran and controlled, in which Decedent had an interest, and by her failure to enforce her order for date of death valuations, despite the repeated efforts of the estate [accountant] and [Sandra] to obtain the information?

12. Did not the [Orphans' Court] commit legal error by its failure to impose sanctions and punitive damages against [Howard] as a result of his fraud upon the estate by misrepresenting the mental health of [D]ecedent, and manipulation and conversion of [D]ecedent's assets?

Brief of Appellant, at 4-7 (unnecessary capitalization omitted).

Prior to discussing the merits of Sandra's claims, we must address significant deficiencies in her appellate brief. "When deficiencies in a brief hinder our ability to conduct a meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." *Irwin Union National Bank and Trust Co. v. Famous*, 4 A.3d 1099, 1103 (Pa. Super. 2010); Pa.R.A.P. 2101. "Appellate arguments which fail to adhere to [the

Rules of Appellate Procedure] may be considered waived, and arguments which are not appropriately developed are waived.  Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." ***Lackner v. Glosser***, 892 A.2d 21, 29-30 (Pa. Super. 2006) (internal citations omitted).  The brief must support the appellant's claims with pertinent discussion, with references to the record and with citations to legal authorities.  ***Id.***; Pa.R.A.P. 2119(a)-(c).  Further, the argument section of an appellate brief "shall be divided into as many parts as there are questions to be argued."  Pa.R.A.P. 2119(a).

Here, Sandra has submitted a lengthy brief, as well as an equally extensive reply brief.  However, both filings are little more than protracted regurgitations of Sandra's version of the facts and history of this bitter dispute between brother and sister, peppered with accusations and complaints directed at both Howard and the Orphans' Court.  Sandra fails to make cogent, distinct arguments with regard to each of her claims, as required by the Rules of Appellate Procedure.  ***See*** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation to authorities as are deemed pertinent.").  Her section headings bear no

relation to the issues raised in her statement of the questions involved.[2] Indeed, the entire argument section of her brief appears to be nothing more than a prolix attempt to relitigate her case on the appellate level.

Most significantly, Sandra's brief is utterly devoid of citation to pertinent authority or to the record itself. Rule of Appellate Procedure 2119(c) requires that, "[i]f reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears." Pa.R.A.P. 2119(c). In complete disregard of this rule, Sandra's brief is replete with references to pleadings, orders, documents, factual assertions, and testimony, all of which are wholly unsupported by any references whatsoever to "the place in the record where the matter referred to appears."[3] **Id.** This wholesale failure to provide this Court with citations to the record renders meaningful review impossible in this matter, where the electronic certified record consists of over 6,000 pages of documents and includes more than 700 pages of

---

[2] The unnumbered section headings in Sandra's argument section consist of the following: "Squire Service Inc.," Brief of Appellant, at 16; "Valuation of Squire," **id.** at 18; "One-Man Corp.," **id.** at 19; "Satisfaction Issues," **id.**; "Elder Abuse," **id.** at 21; "Estate's Petition to Require [Howard] to Account," **id.** at 22; "Accounts and Objections," **id.** at 24; "225 Melrose Circle," **id.** at 26; "Surcharges," **id.** at 31; "Reimbursement to Executrix and Legal Fees," **id.** at 32; "Executrix's Commission," **id.** at 46; "Taxes," **id.** at 55; and "Consequences for [Howard]," **id.** at 63. **Compare with id.** at 4-7 ("Statement of the Questions Presented").

[3] In several places throughout her brief, Sandra inserted blank citations to the record. **See, e.g.**, Brief of Appellant, at 28 ("(R.     a)").

transcript. "It is not this Court's responsibility to comb through the record seeking the factual underpinnings of [appellant's] claim[s]." ***Irwin Union Nat. Bank & Tr. Co.***, 4 A.3d at 1103.

In sum, Sandra's brief is utterly deficient and effectively hinders any attempt by this Court to conduct effective appellate review. ***See id.*** Accordingly, we are constrained to dismiss the appeal.

Appeal dismissed. Application to replace proof brief with definitive copies denied.[4]

_____

[4] On June 15, 2020, counsel for the Appellant filed an "Application to Replace Proof Brief filed January 15, 2020 with Definitive Copies in Accordance with Pa.R.A.P. 2185(c)." In that application, counsel averred that Appellant's "definitive brief" had been filed on June 10, 2020. A review of the docket indicated that it had not been filed at that time. On August 1, 2020, counsel submitted a letter to the Court, explaining that his "definitive brief" had been rejected for filing on June 15, 2020. Counsel explained that the Prothonotary had apparently deemed the "definitive brief" to be a second "substituted brief," as he had previously submitted two briefs—one on December 13, 2019, and another on January 15, 2020. As such, the Prothonotary refused to accept the brief for filing. Accordingly, counsel requested that we grant his June 15, 2020, application so that the Prothonotary would accept his "definitive brief" for filing.

Rule of Appellate Procedure 2185(c) provides as follows:

(c) Definitive Copies.—If the record is being reproduced pursuant to Rule 2154(b) (large records) the brief served pursuant to Subdivision (a) of this rule [(governing time for serving and filing of briefs)] may be typewritten or page proof copies of the brief, **with appropriate references to pages of the parts of the original record involved**. **Within 14 days after the reproduced record is filed each party who served briefs in advanced form under this subdivision shall serve and file definitive copies of his or her brief or briefs containing references to the pages of the reproduced record in place**

J-A13028-20

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/15/2020

_____

> **of or in addition to the initial references to the pages of the parts of the original record involved**.  No other changes may be made in the briefs as initially served, except that typographical errors may be corrected.

Pa.R.A.P. 2185(c) (emphasis added).

Here, Appellant's "original" brief, filed on January 15, 2020, contained no "references to the pages or parts of the original record involved," in violation of Rule 2185(c).  Moreover, after this Court granted counsel permission to dispense with the filing of a reproduced record by Order dated May 5, 2020, counsel did not file his "definitive brief" within 14 days as prescribed by the rule.  Rather, he waited more than one month to file an application to do so, in which he misinformed the Court that the "definitive brief" had already been filed.  Because counsel failed to comply with any part of Rule 2185(c), we deny the application.

Finally, we briefly address the claim raised by counsel regarding the prothonotary's rejection of his definitive brief.  The powers wielded by the prothonotaries and clerks of court are purely ministerial in nature. ***Commonwealth v. Williams***, 106 A.3d 583, 588 (Pa. 2014). "Far from operating as an independent reviewer and screening officer with respect to court filings, the clerk of courts fulfills a strictly administrative function[.]" ***Id.*** at 588-89.  "To afford the clerk of courts a broad discretionary power to . . . enforce the rules of appellate procedure would be inconsistent with the nature of the office of the clerk of courts." ***Id.*** at 588.  Accordingly, rather than rejecting counsel's filing, the better course of action for the prothonotary would have been to accept the brief for filing and allow the opposing party to raise its propriety with the merits panel if it so chose.

- 9 -