106 A.3d 583

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Christopher WILLIAMS, Appellee.**

Supreme Court of Pennsylvania.

July 21, 2014.

Hugh J. Burns, Jr., Philadelphia District Attorney's Office, Philadelphia, Amy Zap, Office of the Attorney General, Harrisburg, for Appellant.

Victor J. Abreu, Jr., Federal Public Defender's Office, Philadelphia, for Appellee.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

### *OPINION*

Justice BAER.

Before this Court is a Motion to Quash the Commonwealth's appeal from an order of the Court of Common Pleas of Philadelphia County granting Appellee Christopher Williams' petition for relief under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546 in this capital case. Appellee argues that this Court lacks jurisdiction to hear the appeal because the Commonwealth failed to file timely its notice of appeal with the Philadelphia County Clerk of Courts in accordance with Pa.R.A.P. 903(a) ("the notice of appeal ... shall be filed within 30 days after the entry of the order from which the appeal is taken."). For the reasons that follow, we find the Commonwealth's appeal to be timely, and therefore deny Appellee's Motion to Quash.

The relevant procedural history shows that Appellee was convicted of first degree murder and subsequently sentenced to death for the murders of three men in September of 1989. This Court affirmed the judgment of sentence on direct appeal. *Commonwealth v. Williams*, 554 Pa. 1, 720 A.2d 679 (1998). Appellee, thereafter, pursued relief under the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S. §§ 9541–9546. The PCRA court initially granted Appellee relief on a basis unrelated to this appeal. This Court subsequently reversed the PCRA court and remanded for disposition of Appellee's remaining claims. *Commonwealth v. Williams*, 594 Pa. 366, 936 A.2d 12 (2007). On remand, the PCRA court, by memorandum opinion and order dated December 30, 2013, granted Appellee a new trial, finding that trial counsel rendered inef-

fective assistance by failing to investigate medical and forensic evidence and finding that appellate counsel likewise rendered ineffective assistance by failing to argue on appeal that the trial court erred when it limited cross-examination of the Commonwealth's expert witnesses.

On January 29, 2014, thirty days after the PCRA court entered its order granting Appellee a new trial, the Commonwealth electronically filed with the Philadelphia County Clerk of Courts (hereinafter "the Clerk") a notice of appeal and jurisdictional statement appealing the grant of a new trial to this Court.[1] The Clerk sent the Commonwealth an electronic confirmation indicating that the notice of appeal was received on January 29, 2014. Nonetheless, the Clerk refrained from time-stamping the notice of appeal on that date. Instead, the following day, the Clerk informed the Commonwealth that its notice of appeal was defective because it was missing two docket numbers and/or because the Clerk's office preferred a separate notice for each of the three docket numbers contained therein.[2] The Commonwealth filed an amended notice of appeal on January 30, 2014, which the Clerk accepted and time-stamped upon receipt.

On February 11, 2014, Appellee filed with this Court a Motion to Quash the Commonwealth's appeal arguing that the appeal was untimely because the Commonwealth failed to file it within thirty days of the PCRA court's order, as required by Pa.R.A.P. 903(a).[3] In so asserting, Appellee proceeded under

1. The Commonwealth invoked this Court's jurisdiction pursuant to 42 Pa.C.S. § 9546(d) (providing that final orders in capital cases shall be directly appealable to this Court) and Pa.R.Crim.P. 910 (providing that an order granting, denying, or dismissing a PCRA petition shall constitute a final order for purposes of appeal).

2. The Commonwealth initially characterized the defect identified by the Clerk as a failure to include two relevant docket numbers in its January 29 filing. When Appellee pointed out that the January 29 filing contained three docket numbers, the Commonwealth alternatively asserted that the Clerk declined to file the January 29 filing because the Clerk's office preferred a separate notice for each docket number. As we will discuss herein, the precise nature of the alleged defect is not relevant to the disposition of Appellee's Motion to Quash.

3. "Except as otherwise prescribed by this rule, the notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30

the assumption that the Commonwealth filed its notice of appeal on January 30, 2014, the date the Clerk time-stamped the appeal. Taking the position that the Commonwealth failed to file its notice of appeal on or before January 29, 2014, the thirtieth day following the PCRA court's order, Appellee contended that the appeal was untimely and that this Court, therefore, lacked jurisdiction over the appeal. *See* Motion at 4 (citing *Commonwealth v. Bey*, 437 Pa. 134, 262 A.2d 144, 145 (1970) (absent extraordinary circumstances, "timeliness of an appeal and compliance with the statutory provisions which grant the right of appeal go to the jurisdiction of our Court and its competency to act.")).

In reply, the Commonwealth averred that it filed a timely notice of appeal on January 29, 2014. To substantiate its claim, the Commonwealth attached the electronic confirmation from the Philadelphia County Clerk of Courts indicating that the notice of appeal was received on January 29, 2014. The Commonwealth argued that pursuant to Rule 902 of the Rules of Appellate Procedure, its January 29 filing was timely regardless of whether the Clerk deemed the filing defective. *See* Pa.R.A.P. 902 (holding that "[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal"). The Commonwealth further relied on Superior Court case law for the proposition that a defective but timely notice of appeal is nevertheless timely. *See Commonwealth v. Willis*, 29 A.3d 393, 395–96 (Pa.Super.2011) (holding that a prothonotary, and likewise a clerk of courts, lacks the authority to reject, as defective, a timely notice of appeal); *Commonwealth v. Alaouie*, 837 A.2d 1190, 1192 (Pa.Super.2003) (same); *Nagy v. Best Home Servs., Inc.*, 829 A.2d 1166, 1168 (Pa.Super.2003) (finding an appeal perfected notwithstanding "the Prothonotary's failure to time-stamp and docket the timely-filed, albeit flawed, notice of appeal").

On April 1, 2014, this Court directed the parties to provide briefing on the following issue:

days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a).

Whether the Philadelphia Clerk of Courts should have accepted the Commonwealth's timely, but defective, filing of the Notice of Appeal on January 29, 2014. *See Commonwealth v. Willis*, 29 A.3d 393, 396 (Pa.Super.2011).

The issue presents a pure question of law regarding the timeliness of an appeal and the application of appellate procedural rules. Accordingly, our scope of review is plenary and the standard of review is *de novo*. *Commonwealth v. Cooper*, 611 Pa. 437, 27 A.3d 994, 998 (2011); *Day v. Civil Serv. Comm'n of Borough of Carlisle*, 593 Pa. 448, 931 A.2d 646, 650 (2007).

Appellee presently concedes that the Superior Court's decision in *Willis* was correctly decided, and further characterizes the Superior Court's reasoning in that case as "sound."[4] As noted *supra*, in *Willis*, the Superior Court held that a prothonotary, and likewise a clerk of courts, lacks the authority to reject, as defective, a timely notice of appeal. 29 A.3d at 396. Appellee would have this Court reaffirm the Superior Court's holding; and accordingly, Appellee agrees that if the Commonwealth filed a notice of appeal on January 29, 2014, regardless of whether it was defective, the Philadelphia County Clerk of Courts was obligated to accept and time-stamp the notice of appeal on that date.

In an apparent *non sequitur*, Appellee proceeds to argue that this Court cannot conclude, without additional information, that the Commonwealth's notice of appeal was timely. Appellee alleges ambiguity concerning the precise nature of the defect that served as the basis of the Clerk's refusal to accept and docket the January 29 filing. Specifically, Appellee contends that the Commonwealth failed to clarify whether the Clerk deemed the January 29 notice of appeal defective be-

4. On April 29, 2014, Appellee filed an unopposed motion for a thirty-day extension of time to complete and file his brief in response to this Court's order dated April 1, 2014. This Court denied Appellee's motion requesting an extension. On May 13, 2014, Appellee filed a motion for *nunc pro tunc* extension of time, and simultaneously submitted a letter in lieu of a brief, where Appellee addressed the issue which this Court requested briefing on in its April 1 order. As we find Appellee's letter sufficiently detailed for purposes of our review, we likewise deny Appellee's motion for *nunc pro tunc* extension of time for filing a brief.

cause it was missing two docket numbers or because the Clerk's office preferred a separate notice for each of the three docket numbers contained therein, and that this dichotomy makes a crucial difference. Appellee requests that this Court direct the Commonwealth to provide all relevant communications with the Philadelphia County Clerk of Courts regarding the instant appeal so that this Court can ascertain the precise nature of the defect alleged by the Clerk before determining whether the Commonwealth's notice of appeal was timely.

In response, the Commonwealth reiterates the undisputed fact that the Commonwealth filed a timely notice of appeal on January 29, 2014, but that the Philadelphia County Clerk of Courts declined to accept and time-stamp the notice of appeal on that date because of a perceived defect. Relying again on the language in Rule 902 of the Rules of Appellate Procedure, stating that "[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal," as well as the same afore-referenced Superior Court case law, the Commonwealth argues that the act of timely filing the notice of appeal, in and of itself, perfected its appeal. The Commonwealth further argues that the nature of the perceived defect is immaterial, as there is no ambiguity as to what case, or what order in that case, was being appealed.

■■ The timeliness of an appeal and compliance with the statutory provisions granting the right to appeal implicate an appellate court's jurisdiction and its competency to act. *Day,* 931 A.2d at 651–52; *Bey,* 262 A.2d at 145. Absent extraordinary circumstances, an appellate court lacks the power to enlarge or extend the time provided by statute for taking an appeal. *See* Pa.R.A.P. 105; *see also Commonwealth v. Stock,* 545 Pa. 13, 679 A.2d 760, 763–64 (1996); *Bass v. Commonwealth,* 485 Pa. 256, 401 A.2d 1133, 1135 (1979); *Bey,* 262 A.2d at 145. Thus, an appellant's failure to appeal timely an order generally divests the appellate court of its jurisdiction to hear the appeal. *Sidkoff, Pincus, Greenberg & Green, P.C. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.,* 521 Pa. 462, 555 A.2d 1284, 1287 (1989); *Bey,* 262 A.2d at 145.

■ Rule 902 of the Rules of Appellate Procedure identifies the steps most appellants must take to perfect an appeal and thereby invoke an appellate court's jurisdiction. *See* Pa. R.A.P. 901 (addressing the scope of chapter nine of the Rules of Appellate Procedure relating to appeals from lower courts). Specifically, Rule 902 requires appellants seeking to exercise their statutory right of appeal to file a notice of appeal with the clerk of the lower court from which the appeal is taken within the time allotted by Rule 903, generally thirty days. *See* Pa.R.A.P. 902, 903. Rule 902 further stipulates that "[f]ailure of an appellant to take any step other than the timely filing of a notice of an appeal does not affect the validity of the appeal[.]" *Id.*[5] According to the note following Rule 902, the rule "eliminates the 'trap' of failure to perfect an appeal" by making timely notices of appeal "self-perfecting." Pa.R.A.P. 902, Note.[6] Thus, to perfect an appeal from a lower court order, an appellant need only file a notice of appeal with the clerk of the lower court within the applicable time period allotted by Rule 903. A timely notice of appeal triggers the jurisdiction of the appellate court, notwithstanding whether the notice of appeal is otherwise defective.

5. Rule 902 provides in full:
> An appeal permitted by law as of right from a lower court to an appellate court shall be taken by filing a notice of appeal with the clerk of the lower court within the time allowed by Rule 903 (time for appeal). Failure of an appellant to take any step other than the timely filing of a notice of an appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the matter to the lower court so that the omitted procedural step may be taken.

Pa.R.A.P. 902.

6. The note following Rule 902 provides in relevant part:
> This chapter represents a significant simplification of practice. In all appeals the appellant prepares two documents: (1) a simple notice of appeal, and (2) proof of service. The notice of appeal is filed in the lower court and copies thereof, together with copies of the proof of service, are mailed and delivered to all who need to know of the appeal.... The new procedure has a number of advantages ... [T]he new procedure necessarily eliminates the "trap" of failure to perfect an appeal, since the notice of appeal is self-perfecting ... [.]

Pa.R.A.P. 902, Note.

In the event of a defective notice of appeal, Rule 902 encourages, though it does not require, appellate courts to remand the matter to the lower court so that the procedural defect may be remedied. As the note following Rule 902 explains, the rule creates a preference for correcting procedurally defective, albeit timely, notices of appeal so that appellate courts may reach the merits of timely appeals. *See* Pa.R.A.P. 902, Note. The note further indicates that dismissal of a defective appeal remains an alternative where the appellate court determines that an appellant has failed to take the necessary steps to correct an identified defect. *Id.*[7]

Consonant with Rule 902, which treats notices of appeal filed within the applicable time period as self-perfecting, Rule 905(a)(3) of the Rules of Appellate Procedure directs the lower court clerk, upon receipt of a notice of appeal, to "immediately stamp it with the date of receipt." Rule 905(a)(3) provides in full:

> Upon receipt of the notice of appeal the clerk shall immediately stamp it with the date of receipt, and that date shall constitute the date when the appeal was taken, which date shall be shown on the docket.

Pa.R.A.P. 905(a)(3). The use of the word "shall" in Rule 905(a)(3) leaves the lower court clerk no discretion in its application of the rule. Very simply, the lower court clerk must time-stamp a notice of appeal immediately upon receipt.

█ The clerk of courts, therefore, lacks the authority to reject, as defective, a timely notice of appeal. To hold otherwise would repudiate the directive of Rule 902 that a timely notice of appeal is self-perfecting. It would also contravene the plain language of Rule 905(a)(3), which unequivocally requires the clerk for the lower court to time-stamp a notice of appeal immediately upon receipt.

7. The 1986 amendments to Rule 902 reinforce the rule's preference for correcting defective, albeit timely, notices of appeal. The amendments replaced language authorizing appellate courts to dismiss procedurally defective appeals and inserted the current language encouraging appellate courts to "remand ... the matter to the lower court so that the omitted procedural step may be taken." *See* Pa.R.A.P. 902, Note.

Further, to afford the clerk of courts a broad discretionary power to reject defective notices of appeal or to otherwise enforce the rules of appellate procedure would be inconsistent with the nature of the office of the clerk of courts. As this Court has recognized, the powers wielded by the clerk of courts, like those of the prothonotary, are purely ministerial in nature. *See In re Administrative Order No. 1–MD–2003*, 594 Pa. 346, 936 A.2d 1, 9 (2007).[8] The clerk of courts and prothonotary are not permitted to interpret statutes or challenge court actions. *Id.* Likewise, they lack the authority to either evaluate the merits of a litigant's pleadings or decline to accept a timely notice of appeal. *See Brown v. Levy*, 621 Pa. 1, 73 A.3d 514, 519 (2013). Far from operating as an independent reviewer and screening officer with respect to court filings, the clerk of courts fulfills a strictly administrative function, and is therefore obligated to accept and process notices of appeal upon receipt in accordance with the Rules of Appellate Procedure, notwithstanding any perceived defects therein.[9]

8. The clerk of courts and prothonotary occupy parallel offices, with the first administering the criminal division of the court of common pleas and the later the civil division. *In re Administrative Order No. 1–MD–2003*, 936 A.2d at 9. This Court has chosen to apply the same limitations to the clerk of courts as it does the prothonotary, as both offices are created by the same constitutional provision and have substantially identical statutory grants of authority. *Id.* Accordingly, this opinion speaks equally to the prothonotary's office as it does the clerk of courts.

9. We acknowledge that Rule 910(c) of the Rules of Appellate Procedure directs the Prothonotary of the Supreme Court to reject jurisdictional statements filed with this Court that fail to comply with specific formatting guidelines contained in that rule. *See* Pa.R.A.P. 910(c) ("The Prothonotary of the Supreme Court shall not accept for filing any [jurisdictional] statement that does not comply with this rule ...."). Rule 910(c) has no bearing on the manner that lower court clerks process notices of appeal, as the rule is addressed to the Supreme Court Prothonotary and pertains only to jurisdictional statements filed with this Court. Moreover, Rule 910(c) does not alter our view that the powers wielded by the prothonotary and clerk of courts are purely ministerial in nature. Rule 910(c), like Rule 905(a)(3), is couched in narrow language that leaves little or no room for independent action or discretionary review by the office of the prothonotary. *Compare* Rule 905(a)(3) (stating that a lower court "shall" time-stamp a notice of appeal immediately upon receipt), *with* Rule 910(c) (dictating that the Prothonotary of the Supreme Court "shall" reject jurisdictional state-

Our position is consistent with various decisions from the intermediate appellate courts of this Commonwealth addressing the timeliness of appeals under Rule 902 and 903 of the Rules of Appellate Procedure and the manner the clerk of courts and prothonotary should process the same. *See supra* p. 174, 106 A.3d at 585–86, citing *Willis, Alaouie,* and *Nagy; see also Larocca v. W.C.A.B. (Pittsburgh Press),* 140 Pa. Cmwlth. 192, 592 A.2d 757, 761–62 (1991), *allocatur denied* 529 Pa. 659, 604 A.2d 251 (1991) ("[a] notice of appeal amounts to little more than evidence of an intent to appeal, yet that is sufficient to perfect an appeal under Pa.R.A.P. 902 and 903.").

The Superior Court's holding in *Willis* is directly on point with this case. In *Willis,* the Superior Court held that the Bucks County Clerk of Courts should have accepted and docketed a timely notice of appeal from a *pro se* litigant, notwithstanding certain procedural defects in the filing. *Id.* at 395–96. Quoting from its prior holding in *Nagy,* the Superior Court in *Willis* explained:

While the Prothonotary must inspect documents that are sent for filing to ensure they are in proper form, the power to reject such documents is limited to notifying the proper party that the document is defective so that the defect may be corrected through amendment or addendum. To hold otherwise would be to confer on the Prothonotary the power to "implement" the Rules governing the form of an appeal and to determine, based upon criteria other than the date they are received, which appeals are timely. Such a power is inconsistent with our [S]upreme [C]ourt's pronouncement that a document is filed when the Prothonotary receives it. Once filed, a notice of appeal is, as with an appeal filed in this court, subject to being stricken or dismissed for failing to cure defects on its face.

ments that do not conform to the specific formatting guidelines contained in that rule). Importantly, the prothonotary and clerk of courts, as court administrators, may not act apart from specific authorization by either statute or rule of court. *See In re Administrative Order No. 1– MD–2003,* 936 A.2d at 9.

*Id.* at 396 (*quoting Nagy*, 829 A.2d at 1170). The Superior Court's reasoning is sound and applies to situations like the one before us.

In this case, it is clear that the Philadelphia County Clerk of Courts erred in failing to accept and time-stamp the Commonwealth's notice of appeal received on January 29, 2014. Rather than requiring the Commonwealth to first refile an amended notice of appeal, the Clerk should have time-stamped the Commonwealth's timely notice of appeal on January 29, 2014, even assuming it was defective, and then informed the Commonwealth of the errors identified in the filing. The Clerk's failure to do so contravenes the directive in Rule 905(a)(3) of the Rules of Appellate Procedure, requiring the clerk of the lower court to time-stamp notices of appeal immediately upon receipt.

The Clerk's failure to time-stamp the Commonwealth's January 29 notice of appeal obviously does not mean that the Commonwealth's appeal is improperly before this Court. The record herein demonstrates that the Commonwealth filed its notice of appeal within thirty days of the trial court's order granting PCRA relief. Indeed, Appellee does not dispute this. Accordingly, the Commonwealth perfected its appeal pursuant to Rule 902 of the Rules of Appellate Procedure, and this Court has jurisdiction over this timely appeal.

Appellee's contention that this Court should inquire into the nature of the defect that served as the basis of the Clerk's refusal to accept and docket the Commonwealth's January 29 filing before deciding the Motion to Quash is meritless. The precise nature of the alleged defect in the Commonwealth's January 29 notice of appeal is of no consequence. As Rule 902 of the Rules of Appellate Procedure states, "[f]ailure of an appellant to take any step other than the timely filing of a notice of an appeal does not affect the validity of the appeal[.]" Knowing that the Commonwealth filed a timely notice of appeal within thirty days of the lower court order is sufficient to resolve the jurisdictional question presented by Appellee's Motion to Quash. Accordingly, Appellee's Motion to Quash is **DENIED.**

Chief Justice CASTILLE and Justices SAYLOR, EAKIN, TODD, McCAFFERY and STEVENS join the opinion.

Chief Justice CASTILLE files a concurring opinion.

Chief Justice CASTILLE, concurring.

I join the Majority Opinion with the single exception of its characterization of appellee's position—that we should further delay this capital appeal and first inquire into the specific reason why the clerk's office below assumed a power that Williams himself concedes the clerk did not have—as simply "meritless." Majority Op. at 181, 106 A.3d at 590. The position, which is offered by the federally-financed Federal Community Defender's Office ("FCDO"), in fact is frivolous, and may warrant sanctions.

The important corrective issue we address—to remind ministerial officers that they are indeed purely ministerial officers—was not raised *sua sponte*, but arose because the FCDO sought to nullify the Commonwealth's appeal through a motion to quash, filed twelve days after the Commonwealth's notice of appeal. The Court then directed briefing on the preliminary issue the FCDO raised, giving each side thirty days. The FCDO's response was to request a thirty day extension of time to brief an issue the FCDO not only raised itself, but posed as certain, declaring that "this appeal must be quashed." Motion to Quash Appellant/Commonwealth Appeal at 4. The Court denied the extension, and when put to defend its motion on the merits, as the Majority notes, the FCDO effectively conceded the legal issue in an untimely "letter brief" it eventually filed. *See* Letter Brief of FCDO, dated May 13, 2014 at 3. The Commonwealth responded two days later. Notably, rather than confessing its error (or tactic), and withdrawing its motion to quash, the FCDO's letter brief sought instead to delay the matter further, claiming that we should inquire into factual irrelevancies.

In short, the FCDO compounded its ethical lapse in filing a frivolous motion by failing to take the proper measures once its position was exposed, and instead seeking to further delay the appeal. Even aside from the ongoing ethical questions

attendant to **any** activity by the FCDO in state capital matters, the position taken here warrants exposure and possible sanction. I would also direct the Prothonotary not to entertain briefing extension requests from the FCDO in this appeal, which it has already delayed for frivolous reasons.