J-S42021-25                    2026 PA Super 31

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                              :          PENNSYLVANIA
                              :
           v.                   :
                              :
                              :
CHRISTOPHER M. MUMFORD       :
                              :
       Appellant       :   No. 81 MDA 2025

Appeal from the Judgment of Sentence Entered December 17, 2024
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000760-2022

BEFORE:  OLSON, J., KING, J., and LANE, J.

OPINION BY KING, J.:              **FILED: FEBRUARY 19, 2026**

Appellant, Christopher M. Mumford, appeals from the judgment of sentence imposed in the Lebanon County Court of Common Pleas, following his jury trial convictions for persons not to possess a firearm and firearms not to be carried without a license.[1]  We affirm Appellant's convictions but vacate and remand for resentencing.

The trial court set forth the relevant facts and procedural history of this case as follows:

> During the trial, the jury heard testimony from several officers involved in the investigation which stemmed from a vehicle chase originating out of Lancaster County[.]  The jury heard testimony from Officer Brandon Brandt from the Northern Lancaster County Regional Police Department.  Officer Brandt testified that on April 28, 2022, around 1:43 a.m., he observed a silver Ford van that did not have operating license plate lights.  Officer Brandt stated that after making this observation he began to follow the vehicle and noted the vehicle's license plate number was KGG2840.

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1).

Officer Brandt also testified that while following the vehicle, it sped up and took a route as if it was trying to get away from him. Officer Brandt stated that it was at this point that he attempted to initiate a traffic stop but the vehicle failed to stop. Officer Brandt stated that the vehicle fled and that he lost sight of the vehicle during the chase.

However, Officer Brandt explained that he was later able to relocate the vehicle based on skid marks on the road following the van's path of travel. Officer Brandt stated that it appeared that the vehicle had gone off the road and was involved in a crash. The jury also heard from Officer Brandt that at some point during the chase, the vehicle turned around and passed him going in the opposite direction. Officer Brandt indicated that is when he got a look at the driver who appeared to be a [white] male, approximately 40-50 years old, wearing dark clothing. Officer Brandt testified that during the pursuit the driver kept increasing his speed and due to safety reasons, as well as department policy, he discontinued the chase.

Officer Brandt further testified that upon discontinuing the pursuit, he ran the license plate of the vehicle, and it came back to an address on South Ninth Street in Lebanon, PA. Officer Brandt then notified Lebanon County Dispatch and provided the license plate, description of the vehicle, and the description of the driver. The motor vehicle footage (MVR) from Officer Brandt, which was operating during the interaction with the vehicle, was admitted into evidence and played for the jury. Furthermore, photographs of the vehicle Officer Brandt attempted to conduct a traffic stop on were admitted into evidence and shown to the jury. Photographs of where the vehicle crashed were also admitted into evidence and shown to the jury. Additionally, Officer Brandt identified Appellant in court as the individual he saw driving and fleeing the crash scene on April 28, 2022.

The jury also heard testimony from Officer Roger Soliday from the Lebanon City Police Department. Officer Soliday testified that on April 28, 2022, he heard the description of the vehicle over dispatch; a silver van with a Pennsylvania license plate KGG2840. The jury heard from Officer Soliday that around 2:39 a.m., he observed the van matching the description and initiated a traffic stop on the vehicle. Officer

- 2 -

Soliday testified that the vehicle pulled over. However, as the vehicle was coming to a stop, the passenger door flew open, and a passenger got out and fled the scene. Officer Soliday testified that as the passenger got out and ran, he observed the individual discarding an item. Officer Soliday stated that the object looked like a firearm based on its shape and that he heard it skid across the sidewalk when it fell. During his testimony, Officer Soliday clarified that he was not the officer who ultimately recovered the firearm but that he did see it while it was on the street.

Officer Soliday further testified that the passenger that fled from the vehicle matched the description of the driver that was given previously over dispatch. Officer Soliday stated he observed a white male, approximately 40-50 years old, wearing dark clothing. He also stated that he remembered the suspect's height and build and that he caught a glimpse of the side profile of the suspect as he ran away. Officer Soliday identified the Appellant in court as the individual he saw fleeing the scene on April 28, 2022.

Officer Soliday explained to the jury that he decided not to pursue the passenger but instead remained at the scene with the vehicle and spoke with the driver. The driver was identified as Richard Phillips, who was an older black male, approximately 70 years old.[2] Officer Soliday testified that Mr. Phillips was very [cooperative] and told him that the individual who fled from the vehicle was named "Chris". However, Mr. Phillips did not know the individual's last name. Officer Soliday testified that Mr. Phillips stated that he was giving "Chris" a ride home after "Chris" was in an accident with the vehicle earlier that night. At some point Mr. Phillips showed the Officer the location where he was going to drop "Chris" off. That address was associated with Appellant, Christopher Mumford.

The jury also heard testimony that Officer Soliday was given a wallet, which Mr. Phillips retrieved from the passenger side area. The wallet included a driver's license, multiple credit cards, bank cards, and a Pennsylvania benefits card, all with [Appellant,] Christopher Mumford's name. Officer Soliday

---

[2] Mr. Phillips died prior to trial.

was also shown the photographs that had been previously admitted and identified by Officer Brandt as the vehicle that fled earlier that night. Officer Soliday testified that it was the same vehicle he initiated the traffic stop on that night. The MVR from Officer Soliday, which was operating during the traffic stop, was also admitted into evidence and played for the jury. Officer Soliday was also shown photographs of the firearm and identified it as the same firearm that was recovered from the scene. Additionally, the actual firearm that was found at the scene was admitted into evidence and identified by Officer Soliday.

Lieutenant Sean Buck from the Lebanon City Police Department was called to [testify] regarding his involvement in the investigation. Lieutenant Buck testified that he was the backup unit that responded to assist Officer Soliday with the traffic stop. Lieutenant Buck testified that upon arriving on the scene, he observed a gun on the sidewalk on the passenger side of the vehicle. Lieutenant Buck stated he was the officer who collected and secured the firearm from the scene. He confirmed the firearm was loaded when it was found. The photographs of the firearm, which was a Tarus 9-millimeter Luger, were admitted into evidence and shown to the jury. Lieutenant Buck identified the gun as the same firearm that he recovered from the scene on April 28, 2022. Lieutenant Buck testified to the process of collecting the firearm and the preservation of the chain of evidence. Lieutenant Buck also testified that at some point during the investigation he was asked to collect a buccal swab from Appellant. A stipulation was entered by Counsel that Lieutenant Buck properly recovered the DNA sample from [Appellant]. Additionally, Lieutenant Buck identified Appellant in court as the individual he collected the buccal swab from.

The jury also heard testimony from Lieutenant Buck regarding whether Appellant had a concealed carry permit. Lieutenant Buck testified that he was informed by the Pennsylvania State Police that Appellant did not have a license to carry firearms. Lieutenant Buck also testified to certified records that reflected the previous convictions of Appellant. The certified records showed that Appellant had convictions for Burglary, from April 23, 1998; Delivery of Controlled Substances, from April 28, 2004; Delivery of

Controlled Substances, from February 29, 2012; Delivery of Controlled Substances, from February 29, 2012; and Possession with Intent to Deliver a Controlled Substance, from February 26, 2017.

The jury heard testimony from Lieutenant Keith Uhrich of the Lebanon City Police Department. Lieutenant Uhrich testified that his involvement in the case began after the firearm was collected from the scene and placed in the lab for processing. Lieutenant Ulrich stated that during the investigation he was asked to fingerprint the gun for latent prints. He testified that no latent prints were found on the firearm. The photograph of the firearm previously admitted was shown to Lieutenant Ulrich, who identified it as the same firearm he tested for fingerprint purposes. Lieutenant Ulrich testified that he was later asked to have the gun tested for DNA, which involved swabbing the firearm and then submitting it to the State Police Crime Lab for DNA analysis. Lieutenant Uhrich explained the process of collecting prints and swabbing for DNA, as well as the steps taken in order to preserve the chain of evidence and prevent cross contamination.

Corporal Christopher Sulitka, qualified as an expert in the field of firearms and tool mark examinations, testified that he was asked to analyze the ballistic functionality of a black Taurus G2c 9-millimeter handgun. Corporal Sulitka explained to the jury how ballistic functionality is tested and testified that this particular firearm was functional and capable of discharging ammunition. The photograph of the firearm previously admitted was shown to Corporal Sulitka who identified it as the same firearm he tested for functionality purposes.

The jury also heard from Alexandria Gambone of the Pennsylvania State Police Harrisburg Regional Lab, who was qualified as an expert in the area of serology. Ms. Gambone testified that she received the swabs of the Taurus G2c 9-millimeter handgun and then she prepared the swabs to be sent to DNA for analysis. Ms. Gambone testified that she later received a buccal swab from [Appellant] and also prepared that sample to be sent for DNA analysis. Ms. Gambone explained the process of preparing the evidence for testing and explained the steps taken to preserve the

chain of evidence and prevent cross contamination.

> Lastly, the jury heard from Breanna Brown, qualified as an expert in DNA identification, from the Pennsylvania State Police Lab. Ms. Brown testified that she received the swabs from the firearm and processed it for DNA. Ms. Brown explained that she obtained a partial DNA profile that consisted of three contributors from the swab of the Taurus G2c 9-millimeter handgun. Ms. Brown testified that she also analyzed the buccal swab collected from [Appellant]. Ms. Brown stated that she then compared the DNA profile collected from the swab of [Appellant] and compared it to the profiles found on the gun. Ms. Brown testified that Appellant … was determined to be a potential DNA match to that found on the gun. Ms. Brown explained that the same profile obtained from this handgun is 2.0 million times more likely that it originated from [Appellant], and two other individuals, than if it had originated from three other, unknown individuals in the population. On cross examination, Ms. Brown explained that for the amount of DNA that is required for a DNA profile to be created, an individual has to have interaction with the object. Therefore, Ms. Brown concluded that the contributor of this DNA profile handled the particular gun in this case due to the amount of DNA which was found on it.

(Trial Court Opinion, dated 5/8/25, 5-11) (record citations omitted).

On October 22, 2024, the jury convicted Appellant of persons not to possess firearms and firearms not to be carried without a license. The jury found Appellant not guilty of tampering with or fabricating physical evidence.

On December 11, 2024, the court conducted a sentencing hearing and imposed a term of 7 to 15 years of imprisonment for persons not to possess a firearm, and a concurrent term of 3½ to 7 years of imprisonment for carrying a firearm without a license. On December 17, 2024, the trial court entered an amended sentencing order, which added a one-year term of reentry

supervision to the previously imposed sentence. (**See** Amended Order of Sentence, filed 12/17/24). Appellant did not file a post-sentence motion.

On January 15, 2025, Appellant filed a notice of appeal. On January 16, 2025, the trial court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). Appellant filed a motion for extension of time to file a concise statement, which the trial court granted, directing that Appellant have 21 days following the lodging of the trial notes of testimony to file the statement. The notes of testimony were lodged on March 11, 2025, and Appellant filed an untimely concise statement on April 7, 2025.[3]

On June 23, 2025, this Court issued a rule to show cause why Appellant's

_____

[3] It is well settled that only issues properly raised in a timely Rule 1925(b) statement are preserved for appellate review. **See** Pa.R.A.P. 1925(b)(4)(vii). In criminal cases, where the appellant is represented by counsel, however, the failure to file a timely concise statement may be deemed to be *per se* ineffectiveness and the issues are not automatically waived. **See** Pa.R.A.P. 1925(c)(3); **Commonwealth v. Burton**, 973 A.2d 428, 432-33 (Pa.Super. 2009) (*en banc*) (explaining that counsel's failure to file timely concise statement is functional equivalent of filing no statement at all, as both failures waive all issues on appeal; thus, counsel's failure to file timely concise statement in criminal case constitutes *per se* ineffectiveness, for which remand under Rule 1925(c)(3) is permitted). Nevertheless, "where the trial court addresses the issues raised in an untimely Rule 1925(b) statement, we need not remand but may address the issues on their merits." **Commonwealth v. Brown**, 145 A.3d 184, 186 (Pa.Super. 2016), *appeal denied*, 641 Pa. 56, 165 A.3d 892 (2017). **See also Burton, supra** at 433 (stating: "[I]f there is an untimely filing, this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal"). Under these circumstances, as the trial court had the opportunity to prepare an opinion addressing the issues raised, we decline to find waiver or remand.

appeal should not be quashed as untimely, explaining that it appeared that the notice of appeal, filed on January 15, 2025, was filed more than thirty days after the trial court imposed Appellant's sentence. In response to this Court's rule to show cause, Appellant claimed that there was a distinction between the sentencing order imposed in open court on December 11, 2024, and the amended sentence entered on the docket on December 17, 2024. Specifically, Appellant argued that the December 17, 2024 amended sentence added a one year term of re-entry supervision. By order dated July 9, 2025, this Court discharged the rule to show cause and referred the issue of the timeliness of the appeal to this panel.

Before we address Appellant's issues raised, we must ascertain whether this appeal is properly before us. Our Supreme Court has stated that "[t]he timeliness of an appeal and compliance with the statutory provisions granting the right to appeal implicate an appellate court's jurisdiction and its competency to act." **Commonwealth v. Williams**, 630 Pa. 169, 176, 106 A.3d 583, 587 (2014) (citations omitted). As this Court has explained, "[w]e lack jurisdiction to consider untimely appeals, and we may raise such jurisdictional issues *sua sponte*." **Commonwealth v. Capaldi**, 112 A.3d 1242, 1244 (Pa.Super. 2015) (quoting **Commonwealth v. Burks**, 102 A.3d 497, 500 (Pa.Super. 2014)).

Under Pennsylvania Rule of Appellate Procedure 903(a), a notice of appeal must be filed within thirty days after entry of the order from which the

appeal is taken.  Pa.R.A.P. 903(a).  "Absent extraordinary circumstances, an appellate court lacks the power to enlarge or extend the time provided by statute for taking an appeal.  Thus, an appellant's failure to appeal timely an order generally divests the appellate court of its jurisdiction to hear the appeal."  **Williams, supra** at 176, 106 A.3d at 587 (citations omitted).

Generally, "in cases where the trial court amends the judgment of sentence during the period it maintains jurisdiction pursuant to Section 5505," the appeal lies from the amended judgment of sentence rather than the original sentence.  **Commonwealth v. Wenzel**, 248 A.3d 540, 545 (Pa.Super. 2021), *appeal denied*, 670 Pa. 169, 264 A.3d 753 (2021).  **See also** 42 Pa.C.S.A. § 5505 (stating: "[A] court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed"); **Commonwealth v. Broadie**, 489 A.2d 218, 220 (Pa.Super. 1985) (holding: "a modified sentence constitutes a new sentence from the date of which the time for filing a notice of appeal will begin to run anew").

Here, the trial court imposed its original sentence on December 11, 2024, and issued its amended sentence on December 17, 2024.  Because the court issued the amended sentence within thirty days, we consider the amended sentence to be the operative sentence for the purpose of appeal. Accordingly, we conclude that Appellant timely filed his notice of appeal within

30 days of the date that the court issued its amended sentence.

Appellant raises the following three issues on appeal:

> I. Whether the Commonwealth failed to prove every element of the offense of persons not to possess firearms, as the evidence was insufficient to prove that Appellant actually or constructively possessed the firearm 60 days following his firearm disability?
>
> II. Whether the Commonwealth failed to prove every element of the offense of carrying a firearm without a license, as the evidence was insufficient to prove that Appellant carried a firearm inside of Mr. Phillips' vehicle or carried the firearm concealed on their person?
>
> III. Whether the trial court erred by not making a finding that Appellant voluntarily, knowingly and intelligently exercised his right to remain silent at his jury trial?

(Appellant's Brief at 4).

Appellant's first two issues concern the sufficiency of the evidence underlying his convictions. A challenge to the sufficiency of the evidence "presents a pure question of law and, as such, our standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v. Santiago*, 294 A.3d 482, 485 (Pa.Super. 2023).

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of

fact can be drawn from the combined circumstances.

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Akeley***, 320 A.3d 106, 110-11 (Pa.Super. 2024) (quoting

***Commonwealth v. Sebolka***, 205 A.3d 329, 336-37 (Pa.Super. 2019)).

In his first issue, Appellant argues that the Commonwealth failed to prove that he possessed the firearm. Appellant claims that Officer Soliday was the sole witness who observed the passenger discard an item. Appellant emphasizes that Officer Soliday described the item discarded as something "in the shape of what looked like it could possibly be a pistol or firearm" but the officer did not indicate that the firearm later found on the side of the street was the same item that the passenger discarded. (***See*** Appellant's Brief at 20) (quoting N.T. Trial, 10/22/24, at 39). Appellant suggests that because there were three DNA sources on the firearm, the Commonwealth failed to prove that the driver of the vehicle, Mr. Phillips, did not discard the firearm. Appellant also suggests that it is plausible that his DNA transferred onto the surface of the firearm on an earlier occasion, prior to his firearm disability. Appellant concludes that the evidence at trial was insufficient to establish that

he actually or constructively possessed the firearm 60 days following his firearm disability required to sustain his conviction for persons not to possess firearms. We disagree.

The Uniform Firearms Act provides, in relevant part, as follows:

**§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms**

**(a) Offense defined**.—

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

(2)(i) Except as otherwise provided in this paragraph, a person who is prohibited from possessing, using, controlling, selling, transferring or manufacturing a firearm under paragraph (1) or subsection (b) or (c) shall have a reasonable period of time, not to exceed 60 days from the date of the imposition of the disability under this subsection, in which to sell or transfer that person's firearms to another eligible person who is not a member of the prohibited person's household.

\* \* \*

18 Pa.C.S.A. § 6105(a). Under Section 6105, "an individual is subject to criminal prosecution if he unlawfully possesses: (1) any weapon that is specifically designed to or may readily be converted to expel a projectile by means of an explosive; or (2) the frame or receiver of such a weapon." **Commonwealth v. Thomas**, 988 A.2d 669, 671-72 (Pa.Super. 2009),

*appeal denied*, 607 Pa. 704, 4 A.3d 1054 (2010).

> This Court has held that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." ***Commonwealth v. Heidler***, 741 A.2d 213, 215 (Pa.Super. 1999)[(*en banc*)]. Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. ***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa.Super. 2013) (conviction under 18 Pa.C.S.[A.] § 6106(a) supported by a finding of constructive possession). ***See also Commonwealth v. Parker***, 847 A.2d 745 (Pa.Super. 2004) (same). "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." ***Hopkins, supra*** at 820 (citation and quotation omitted). "We have defined constructive possession as conscious dominion," meaning that the defendant has "the power to control the contraband and the intent to exercise that control." ***Id.*** (citation and quotation omitted).
>
> "To aid application, we have held that constructive possession may be established by the totality of the circumstances." ***Id.*** (citation and quotation omitted).
>
> It is well established that, "[a]s with any other element of a crime, constructive possession may be proven by circumstantial evidence." ***Commonwealth v. Haskins***, [677 A.2d 328, 330 (Pa.Super. 1996)] (citation omitted). In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

***Commonwealth v. Parrish***, 191 A.3d 31, 36-37 (Pa.Super. 2018), *appeal denied*, 651 Pa. 10, 202 A.3d 42 (2019).

"To find constructive possession, the power and intent to control the contraband does not need to be exclusive to the [defendant] ... and may be found in one or more actors where the item in issue is in an area of joint

control and equal access." ***Commonwealth v. Rojas-Rolon***, 256 A.3d 432, 437-38 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 285 A.3d 879 (2022). ***See also Commonwealth v. Johnson***, 611 Pa. 381, 407, 26 A.3d 1078, 1094 (2011) (explaining that constructive possession of item may be found in one or more individuals if they are occupant of same vehicle and item is located is area of joint control and equal access); ***Haskins, supra*** at 330 (stating: "The fact that another person may also have control and access does not eliminate the defendant's constructive possession; two actors may have joint control and equal access and thus both may constructively possess the contraband"). Finally, a witness' testimony alone is sufficient to prove that a defendant possessed a firearm. ***See, e.g., Commonwealth v. Antidormi***, 84 A.3d 736, 757 (Pa.Super. 2014), *appeal denied*, 626 Pa. 681, 95 A.3d 275 (2014) (determining witness' testimony alone was sufficient evidence to prove possession element under Section 6105(a)(1)).

Instantly, the trial court found that the evidence at trial was sufficient to support the jury's finding that Appellant was in possession of the firearm. As the court explained,

> [e]ven though the gun was not found directly on Appellant's person, evidence was presented that connected the Appellant to the firearm, including DNA evidence. Officer Brandt identified Appellant as the driver who fled in Lancaster County. Officer Soliday identified Appellant as the passenger who later fled from the vehicle when he conducted a traffic stop on the vehicle in Lebanon County. Officer Soliday testified that when the individual got out of the vehicle and ran, he dropped an object that resembled a firearm. That object was later recovered from the scene and

identified as a loaded, fully functioning Taurus G2c 9-millimeter handgun.

The jury also heard testimony from Officer Soliday regarding his discussions with the driver, Mr. Phillips. Mr. Phillips informed Officer Soliday that the passenger who jumped out of the car and ran was named "Chris". Mr. Phillips also told Officer Soliday that "Chris" was driving the car earlier that night but got into a crash. Furthermore, the address where Mr. Phillips was dropping "Chris" off came back to an address associated with Appellant. A wallet which had a driver's license, credit cards, and bank information belonging to Appellant, Christopher Mumford was also found on the passenger side of the vehicle, the same vehicle in which the suspect fled from.

Expert testimony was provided that a partial DNA profile was found on the handgun. While the partial profile consisted of three contributors, a DNA expert testified that Appellant's DNA was a match to one of those individuals. The jury also heard testimony from the DNA expert that due to the amount of touch DNA that was recovered from this particular firearm, she believed the individual contributor personally handled the gun. Furthermore, certified records were admitted into evidence which showed that Appellant had convictions for Burglary, Delivery of Controlled Substances, and Possession with Intent to Deliver a Controlled Substance, all of which are considered enumerated offenses under 18 Pa.C.S.A. § 6105(b), (c) prohibiting Appellant from possessing a firearm in this Commonwealth. All the previous convictions occurred 60 days before the incident on April 28, 2022.

(Trial Court Opinion, dated 5/8/25, at 11-12). On this record, the court ultimately concluded that there was sufficient evidence to support the jury finding both that Appellant possessed the firearm and that he was ineligible to possess a firearm.

The record supports the trial court's analysis. Here, Officer Brandt testified that he saw Appellant discard what looked like a firearm. Additionally,

Lieutenant Buck testified that he later recovered a firearm from that sidewalk on the passenger side of the vehicle. Further evidence establishing Appellant's possession included the driver of the vehicle's identification of the passenger who fled as "Chris," the wallet containing Appellant's ID cards found in the vehicle, and Appellant's DNA found on the firearm which had been thrown by the passenger. On this record, the jury could reasonably infer that Appellant was the passenger who discarded the firearm. *See Akeley, supra*; *Rojas-Rolon, supra*. Finally, as the court explained, the certified records admitted into evidence showed that Appellant had prior convictions which prohibited him from possessing a firearm in this Commonwealth. Thus, the evidence was sufficient to sustain Appellant's conviction for persons not to possess a firearm. Appellant's first issue merits no relief.

In his second issue, Appellant argues that the Commonwealth failed to prove that he carried a firearm inside the vehicle. Appellant claims that the driver, Mr. Phillips, had carried the firearm inside the vehicle, and Appellant insists that the police investigation focused on Mr. Phillips possessing the firearm. Appellant insists that his mere presence near the firearm was insufficient to establish constructive possession. Appellant concludes that the evidence adduced at trial was insufficient to establish that he unlawfully carried a firearm without a license. We disagree.

Section 6106 of the Crimes Codes provides:

**§ 6106. Firearms not to be carried without a license**

**(a) Offense defined.**—

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

\* \* \*

18 Pa.C.S.A. § 6106(a).

Our Supreme Court has stated that "[b]y its plain terms, Section 6106 applies to 'any person who carries a firearm in any vehicle[.]'" ***Commonwealth v. Muhammad***, \_\_\_ Pa. \_\_\_, \_\_\_, 335 A.3d 1047, 1053 (2025) (quoting 18 Pa.C.S.A. § 6106(a)(1)). The Court explained that to convict a defendant of carrying a firearm without a license, "there were only three elements the jury needed to find beyond a reasonable doubt: [First, that defendant] carried the firearm in a vehicle.... Second, that [he] was not in his place of abode; that is his home or a fixed place of business.... And, third, that [he] did not have a valid and lawfully issued license to carry a firearm." ***Id.*** Furthermore, as discussed above, "it is possible for two people to have joint constructive possession of an item." ***Hopkins, supra*** at 820–21 (citing ***Commonwealth v. Sanes***, 955 A.2d 369, 373 (Pa.Super. 2008), *appeal denied*, 601 Pa. 696, 972 A.2d 521 (2009)).

Instantly, the trial court explained that the evidence established that Appellant was connected to both the firearm and the vehicle in question. Furthermore, Appellant did not have a license to carry a firearm and would

have been unable to obtain such license to carry a firearm in a vehicle based on his prior felony convictions. Therefore, the court concluded that the Commonwealth provided sufficient evidence to support the jury's verdict of guilty for carrying a firearm without a license. (Trial Court Opinion, dated 5/8/25, at 13).

The record supports the trial court's determination. As discussed above, the evidence admitted at trial, viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient for the jury to reasonably infer that Appellant was the individual who discarded a firearm as he fled from the scene of the traffic stop. The jury could also reasonably infer that Appellant possessed the firearm in the vehicle prior to the traffic stop. As this Court has explained, the power and intent to control a firearm necessary for constructive possession need not be exclusive to the defendant. **See Rojas-Rolon, supra**. On this record, it is reasonable to infer that even if, as Appellant insists, the firearm was possessed by Mr. Phillips, Appellant could have also exercised dominion and control over the firearm while it was in the vehicle. **See Hopkins, supra**. Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the evidence at trial was sufficient to establish that Appellant carried the firearm in the vehicle without a license. **See Akeley, supra**. Appellant's second issue is meritless.

In his third issue, Appellant argues that the trial court erred in finding that Appellant made a knowing, voluntary, and intelligent waiver of his right

to testify. Appellant claims that the trial court's colloquy was inadequate in that the court did not determine if Appellant was under the influence of drugs or alcohol, which could impair his ability to understand; if any promises were made to Appellant not to testify; or if anybody forced or coerced him not to testify or if he made the decision of his own free will. Appellant acknowledges that a trial court is not required to conduct a colloquy, but he suggests that the court failed to ensure that Appellant understood that he was waiving his right to testify knowingly, intelligently, and voluntarily. (Appellant's Brief at 27). Appellant concludes that we must grant relief on these grounds. We disagree.

Preliminarily, we must discern whether Appellant properly preserved this issue for our review. Pennsylvania Rule of Appellate Procedure 302(a) establishes that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). As this Court has explained, the requirement that an appellant raise an issue before the trial court extends to issues regarding the voluntariness of a defendant's waiver of the right to testify. **Commonwealth v. Duffy**, 832 A.2d 1132, 1137 (Pa.Super. 2003), *appeal denied*, 577 Pa. 694, 845 A.2d 816 (2004) (holding that where "[a]ppellant did not object to the trial court's failure to conduct a colloquy regarding waiver of [the a]ppellant's right to testify. … [a]ppellant failed to preserve this issue for appeal") (footnote omitted). Accordingly, we

conclude that Appellant failed to preserve this issue for appeal.[4]

Although the issues that Appellant presents on appeal merit no relief, our review of the record indicates that the court imposed an illegal sentence when it modified Appellant's sentence outside his presence. This Court has explained:

> The legality of a criminal sentence is non-waivable, and this Court may raise and review an illegal sentence *sua sponte*. Because the legality of a sentence presents a pure question of a law, our scope of review is plenary, and our standard of review is *de novo*. If no statutory authorization exists for a particular sentence, that sentence is illegal and must be vacated.

***Commonwealth v. Derrickson***, 242 A.3d 667, 673 (Pa.Super. 2020) (quoting ***Commonwealth v. Pi Delta Psi, Inc.***, 211 A.3d 875, 889-90 (Pa.Super. 2019)).

---

[4] Moreover, we note that a "trial court is not required to conduct a colloquy to determine whether a defendant has made a knowing, intelligent and voluntary waiver of his right to testify." ***Commonwealth v. Washington***, 269 A.3d 1255, 1264 (Pa.Super. 2022) (*en banc*) (footnote omitted); ***see also Duffy, supra*** at 1137 n.3 (explaining: "there is no requirement that the trial court conduct an on-the-record colloquy when a defendant waives his right to testify"). "Nevertheless, a criminal defendant must understand his decision not to testify if not by colloquy, then by the presumed competent advice of counsel." ***Washington, supra*** at 1264 (citation omitted).

Our review of the record indicates that the trial court had a discussion with Appellant concerning his decision to remain silent. (N.T. Trial, 10/22/24, at 137-40). Appellant confirmed that he spoke with his attorney about his choice not to testify both prior to trial and during the brief recess that the court provided prior to discussing Appellant's decision whether to testify or not. Thus, even if Appellant had preserved this issue, the record indicates that Appellant had the "presumed competent advice of counsel" prior to making his decision to waive his right to testify. ***See Washington, supra***.

Pennsylvania law sets forth a requirement for mandatory imposition of reentry supervision in Section 6137.2, which "applies to persons committed to the department with an aggregate minimum sentence of total confinement under 42 Pa.C.S.[A.] § 9756(b) (relating to sentence of total confinement) of 4 years or more."  61 Pa.C.S.A. § 6137.2(a).  The statute mandates that "[a]ny person under subsection (a) shall be sentenced to a period of reentry supervision of 12 months consecutive to and in addition to any other lawful sentence issued by the court." 61 Pa.C.S.A. § 6137.2(b).

This Court considered the implications of Section 6137.2 in *Commonwealth v. Santiago*, No. 768 MDA 2023, 2024 WL 1462304 (Pa.Super. filed Apr. 4, 2024) (unpublished memorandum).[5]  There, the trial court sentenced the appellant to an aggregate term of 7½ to 15 years of incarceration.  *Id.* at *7.  This Court concluded that the "[a]ppellant was subjected to the mandatory reentry supervision requirements of 61 Pa.C.S.A. § 6137.2" and the trial court's original sentence, which omitted the requirement for reentry supervision, was an illegal sentence.  *Id.*  Accordingly, this Court concluded that the trial court possessed the authority to mold a new, statutorily correct sentence.  *Id.*  Nevertheless, this Court held that the trial court's amended sentence was also an illegal sentence, where there was no indication that the trial court held a resentencing hearing or that Appellant

---

[5] *See* Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

was otherwise present in court when the amended sentence was imposed. *Id.*

The Court considered a similar issue in ***Commonwealth v. Norris***, No. 1439 WDA 2022, 2023 WL 6458962 (Pa.Super. filed Oct. 4, 2023) (unpublished memorandum), when we considered *sua sponte* whether the "trial court entered an illegal sentence when it amended [the a]ppellant's sentence outside his presence." *Id.* at \*6. This Court explained that because the trial court imposed an aggregate sentence of more than four years, Section 6137.2 required that the court impose a term of one year of reentry supervision. *Id.* at \*7. Although the trial court issued an amended sentence adding the term of reentry supervision,

> there is no indication on the trial court docket that the trial court held a resentencing hearing or that [the a]ppellant was present in court when the amended sentence was imposed. *See* Pa.R.Crim.P. 602 ("The defendant shall be present at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence[.]"). As such, the trial court entered an illegal sentence.

*Id.* Therefore, this Court vacated the amended sentence and remanded for resentencing.

Here, the trial court sentenced Appellant to an aggregate sentence of 7½ to 15 years of incarceration; as such, Appellant was subject to the mandatory reentry supervision requirements of 61 Pa.C.S.A. § 6137.2. The trial court's initial sentence on December 11, 2024 did not include a term of reentry supervision. (*See* N.T. Sentencing, 12/11/24, at 7-8). Because reentry supervision is mandated by Section 6137.2, the initial sentencing

order was an illegal sentence. ***See Santiago, supra***. Although the trial court's December 17, 2024 amended sentencing order included the term of reentry supervision, because there is no indication that the trial court conducted a resentencing hearing or that Appellant was present when the amended sentence was imposed, that sentence is similarly illegal. ***See id***; ***Norris, supra***; Pa.R.Crim.P. 602(A). Thus, we conclude that the trial court entered an illegal sentence by amending Appellant's sentence outside of his presence. Accordingly, we affirm Appellant's convictions but vacate the amended sentence and remand for the trial court to conduct resentencing consistent with this decision.

Convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing consistent with this decision. Jurisdiction is relinquished.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/19/2026