**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  H.O., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  A.W., MOTHER | |
| | No. 1528 WDA 2024 |

Appeal from the Order Dated October 11, 2024
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000146-2023

BEFORE:  MURRAY, J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED: June 3, 2025**

A.W. ("Mother") appeals from the order which involuntarily terminated her parental rights to her natural son, H.O. (born in November 2013).[1]  We affirm.

The record reveals the following facts and procedural history.  The Allegheny County Office of Children, Youth and Families ("OCYF" or "the Agency") received multiple reports regarding this family in 2020, alleging substance abuse by Mother and Father (collectively, "Parents") and domestic violence in the home.  **See** N.T., 9/20/24, at 86.  In January 2021, OCYF received a report that Father had overdosed.  **Id**. at 87.  The record is unclear whether the Agency confirmed the allegations against Father; however, it

---

[1] The court also involuntarily terminated the parental rights of K.O. ("Father"); however, Father did not challenge that ruling and he is not a party to the instant appeal.

determined that Father was not living with Mother and H.O. at the time of his alleged overdose. *Id*. Nonetheless, the Agency implemented in-home services for Mother and referred her for intimate partner violence ("IPV") counseling and a drug and alcohol assessment. *Id*. at 87-88.

In March 2021, Mother was hospitalized, which resulted in the court placing H.O., then seven years old, in the emergency protective custody of OCYF. *Id*. at 88-89. On May 11, 2021, the court entered an order adjudicating H.O. dependent, and establishing his permanency goal as reunification. In furtherance of reunification, and in addition to the above-described programs implemented by the Agency prior to H.O.'s removal, Mother was required to maintain the mental health treatment she was receiving at the time, complete an updated drug and alcohol assessment, and participate in supervised visits with H.O. *Id*. at 90. Father was assigned permanency goals similar to those of Mother. On a date unspecified in the record, Parents started residing together again. *Id*.

On August 26, 2021, H.O. was returned home under the supervision of the Agency. *Id*. at 85, 90. According to OCYF caseworker Myia Weisend ("Weisand"), Father, but not Mother, was compliant with the permanency goals, and the court returned the child home for that reason. *Id*. at 90. In fact, Weisend testified that Mother tested positive for opiates on a random drug screen conducted two days after H.O. returned home. *Id*.

On June 29, 2022, H.O. was removed from Parents' care for the second time as a result of Father's deteriorating mental health. *Id*. at 91, 103. H.O. was immediately placed in a pre-adoptive foster home, and his special needs arising from his diagnosis of autism, were met in that home. *Id*. at 81, 91, 98-101, 126-27. The record reveals that the foster parent is employed as a special education teacher for children with autism, making her "very aware" of H.O.'s needs. *Id*. at 81.

The court required that the family undergo individual psychological and bonding evaluations with Patricia Pepe, Ph.D. ("Dr. Pepe"), a licensed psychologist, which Dr. Pepe performed at the end of 2022, and again in October 2023. *Id*. at 39. As a result of these evaluations, Dr. Pepe diagnosed Mother with, *inter alia,* opioid use disorder, generalized anxiety disorder, and relationship distress with a spouse or intimate partner. *Id*. at 41. Dr. Pepe recommended that Mother participate in an outpatient dual diagnosis treatment program and undergo random drug screens. *Id*. at 40. In addition, she recommended that Mother participate in therapeutic visitation with H.O. through the TRAC[2] parenting program because she concluded that H.O.'s relationship with Mother was "very strained." *Id*. at 43. The therapeutic visits

---

[2] "TRAC" is an acronym, the full name of which is not identified in the record. TRAC provided a service for visitation in a therapeutic setting. *See* N.T., 9/20/24, at 43.

through the TRAC program were in addition to Mother's supervised visitations with H.O., which were conducted by a different agency. *Id*. at 94.

By the time Dr. Pepe evaluated Mother in October of 2023, Mother continued to abuse illegal substances and was not fully compliant with the required services. *Id*. at 50-54. In addition, H.O. and Mother's relationship remained strained. Therefore, Dr. Pepe recommended that Mother's supervised visits be reduced from weekly to biweekly, and that they occur only through the TRAC program. *Id*. at 60, 74.

On June 23, 2023, the Agency filed a petition for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b). The Agency alleged, in part, as follows.

> Mother failed to complete intimate partner violence counseling. Mother failed to complete drug and alcohol treatment. Mother failed to consistently attend her random drug screens. Mother failed to complete mental health treatment. Mother does not consistently visit [H.O.]

Involuntary Termination Petition, 6/23/23, at ¶ 9.

The court conducted an evidentiary hearing on September 20, 2024, during which H.O., then age nine, was represented by counsel from KidsVoice.[3] The Agency presented testimony from the following witnesses:

---

[3] On July 19, 2023, the court appointed KidsVoice as H.O.'s guardian *ad litem* and legal interests counsel and found there was no conflict in KidsVoice representing both H.O.'s legal and best interests. As such, H.O. was afforded his right to counsel pursuant to 23 Pa.C.S.A. § 2313(a) and Pennsylvania case precedent. *See In re K.M.G.*, 240 A.3d 1218, 1238 (Pa. 2020) (holding

*(Footnote Continued Next Page)*

Police Officers David Gittings, Dallas Cogar, and Shawn Seaman, who performed "welfare checks" on Mother and Father in their home and/or assisted OCYF in removing H.O. the second time; Tarraca Jackson, supervisor of the drug and alcohol screening program at the Allegheny County Health Department; Dr. Pepe, with respect to the individual and interactional evaluations she performed on Mother, Father, H.O., and the foster parent; and OCYF caseworkers Weisend and Renee Taddy. Mother and Father testified on their own behalf.

On October 11, 2024, the court entered an order involuntarily terminating Mother's parental rights to H.O. pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), and (b). Mother filed a timely notice of appeal,[4] as well as a

_____

appellate courts should engage in "limited *sua sponte* review" to determine (1) whether the court appointed "statutorily-mandated counsel to represent the child's legal interests," and (2) "where a GAL/Counsel was appointed to represent both the child's legal and best interests, whether the orphans' court determined that those interests did not conflict").

[4] Mother filed the notice of appeal one day late, on November 13, 2024. **See** Pa.R.A.P. 903(a) (providing that a notice of appeal must be filed within thirty days after the entry of the order appealed from). This Court issued a show cause order directing Mother to explain why the appeal should not be quashed as untimely. Mother responded that her untimely filing was the result of a breakdown in the lower court. Specifically, she claimed that the prothonotary improperly rejected her notice of appeal when she attempted to file it on November 12, 2024. **See Commonwealth v. Williams**, 106 A.3d 583, 588 (Pa. 2014) (holding that "the lower court clerk must time-stamp a notice of appeal immediately upon receipt [and] lacks the authority to reject, as defective, a timely notice of appeal"); **see also** Pa.R.A.P. 905(3) (providing that upon receipt of the notice of appeal, the clerk shall immediately stamp it with the date of receipt, and that date shall constitute the date when the
*(Footnote Continued Next Page)*

concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In her concise statement, Mother raised two issues concerning the order involuntarily terminating her parental rights: an issue challenging the court's termination findings as to section 2511(a); and an issue challenging the court's termination findings as to section 2511(b). The court then authored a Rule 1925(a) opinion.

Mother presents the following issues for our review:

I. Whether or not the court erred in finding that reasonable efforts were made by OCYF and the directives of the prior order were followed?

II. Whether or not the court erred in finding that OCYF had satisfied the requirements relative to the family finding and that Mother's parental rights should be terminated?

Mother's Brief at unnumbered 1 (unnecessary capitalization omitted).[5, 6]

Preliminarily, we must determine whether Mother preserved her issues for our review. As explained above, Mother's concise statement set forth two issues involving the involuntary termination order, one challenging the court's

_____

appeal was taken, which date shall be shown on the docket). Pursuant to **Williams** and Rule 905(3), the prothonotary should not have rejected Mother's notice of appeal and should have dated-stamped it as filed on November 12, 2024. Accordingly, we deem her notice of appeal as timely filed.

[5] In this disposition, we cite to Mother's original appellate brief. Mother filed an amended brief, without leave of this Court to do so, but we fail to discern anything that distinguishes it from the original brief.

[6] In this Court, H.O., through his legal counsel, filed a participant's brief advocating for affirmance of the involuntary termination order.

findings pursuant to section 2511(a), and the other challenging the court's findings pursuant to section 2511(b). However, Mother did not set forth those same issues in the statement of questions involved in her appellate brief. **See** Mother's Brief at unnumbered 1. Instead, she raised different issues, as indicated above.

Moreover, notwithstanding the manner in which Mother framed her issues in her statement of questions involved, the argument section of her brief reflects that, with respect to both issues, she discusses the underlying dependency proceeding, which is governed by the Juvenile Act, 42 Pa.C.S.A. § 6301 *et seq*. However, Mother did not file a notice of appeal from any dependency order. Instead, Mother appealed only from the involuntary termination order, which is governed by section 2511. Thus, because Mother did not appeal from a dependency order, we may not address her arguments regarding the propriety of any dependency order concerning H.O. **See In re A.W.H.**, 319 A.3d 1, at *10 (Pa. Super. 2024) (unpublished memorandum)[7] (declining to address claims regarding dependency proceedings where parent only filed an appeal with respect to a parallel termination matter) (*citing Interest of S.S.*, 252 A.3d 681, 688 (Pa. Super. 2021) (recognizing that dependency proceedings and termination proceedings are two separate,

---

[7] Pursuant to Pa.R.A.P. 126(b), an unpublished or non-precedential decision of the Superior Court filed on or after May 1, 2019, may be cited and considered for its persuasive value.

distinct proceedings "with their own docket numbers, records, and divisions within the Court of Common Pleas")).

Further, although Mother preserved two issues relating to the involuntary termination order by including them in her concise statement—one challenging the court's findings pursuant to section 2511(a), and the other challenging the court's findings pursuant to section 2511(b)—she did not include them in her statement of questions involved. Mother's first issue, as stated in her statement of questions involved, makes no reference to either section 2511 or to the termination order. Similarly, her discussion of the first issue in the argument section of her brief makes no reference to section 2511 or to the termination decree. Instead, the entirety of the discussion for the first issue relates to the dependency proceeding, which we may not address. **See** Mother's Brief at unnumbered 13.

However, we acknowledge that Mother's second issue generally references the termination of her parental rights. **See** Pa.R.A.P. 2116(a) (providing that no question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby); **see also Krebs v. United Refining Co. of Pa.**, 893 A.2d 776, 797 (Pa. Super. 2006) (explaining that this Court will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved). Even assuming that a challenge to the termination order is fairly suggested by the second issue, we conclude that Mother waived any challenge

to the termination order by failing to provide, in the argument section of her brief, meaningful discussion with citation to statutory or case authority pertinent to the involuntary termination of parental rights. **See** Pa.R.A.P. 2119(a); **see also In re M.Z.T.M.W.**, 163 A.3d 462, 465-66 (reiterating that a claim is waived where an appellate brief fails to provide any discussion of the claim with citation to relevant authority or fails to develop the issue in any meaningful fashion capable of review).

Notably, Mother's discussion of the second issue does not reference section 2511(a) or provide any discussion or argument challenging the court's findings as to section 2511(a)(2) or (5). Thus, Mother has waived any challenge to the trial court's findings under subsection (a).

Although Mother references section 2511(b) in her discussion of the second issue, she provides no meaningful discussion of section 2511(b), let alone the considerations essential to a subsection (b) best interests analysis, or the legal standards to be applied in conducting such an analysis. In this regard, the focus of section 2511(b) is the best interests of the child. **See In re C.M.K.**, 203 A.3d 258, 261-62 (Pa. Super. 2019). Section 2511(b) mandates that the "primary consideration" for a court in considering an involuntary termination petition be to the child's "developmental, physical and emotional needs and welfare." **In the Interest of K.T.**, 296 A.3d 1085, 1105 (Pa. 2023). The court must also examine the status of the bond between the parent and child to determine whether its termination would destroy an

existing, necessary, and beneficial relationship. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). In addition to a bond examination, the trial court assesses the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See In re Adoption of C.D.R*., 111 A.3d 1212, 1219 (Pa. Super. 2015).

In her argument for the second issue, Mother provides no discussion whatsoever of H.O.'s best interests. Mother makes no mention of H.O.'s developmental, physical, and emotional needs and welfare. Mother does not discuss the existence of a bond, if any, between her and H.O., or the effect of severing any such bond. Nor does Mother address the safety needs of H.O. or the intangibles, such as love, comfort, and security that H.O. might have with his foster parent. Instead, Mother simply draws a vague conclusion that she "is willing and able to provide for the developmental, physical and emotional needs and welfare of the child pursuant to" section 2511(b). Mother's Brief at unnumbered 14-17. Thus, as Mother provides no meaningful discussion as to the trial court's findings regarding subsection 2511(b), any potential challenge is waived for lack of development.

Based upon the foregoing, we conclude that Mother's claims with respect to the involuntary termination order are waived. Accordingly, we affirm the order involuntarily terminating her parental rights to H.O.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

6/3/2025