J-S47031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTINE R. DUNKOWSKI | : | |
| | : | |
| Appellant | : | No. 1220 EDA 2025 |

Appeal from the PCRA Order Entered April 1, 2025
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0000248-2020

BEFORE: PANELLA, P.J.E., OLSON, J., and BECK, J.

MEMORANDUM BY BECK, J.:                         **FILED MARCH 9, 2026**

Christine R. Dunkowski ("Dunkowski") appeals pro se from the order entered by the Bucks County Court of Common Pleas dismissing her second petition pursuant to the Post Conviction Relief Act ("PCRA").[1]  Because we conclude that her claims are either not cognizable under the PCRA or lack merit, we affirm.

The PCRA court aptly summarized the facts and procedural history of this case as follows:

> [On August 27, 2019,] Officer Scott Patrick ("Officer Patrick") was on patrol when he noticed a vehicle parked in the very rear of the parking lot of the Woodbourne Train Station, located in Middletown Township, Bucks County, Pennsylvania.  He called for additional Officers—Officer Samantha Weed ("Officer Weed") and Officer Christopher Viscardi ("Officer Viscardi")—and as they approached, Officer Patrick noticed [Dunkowksi's

_____

[1] 42 Pa.C.S. §§ 9541-9546.

husband, Albert Dunkowski ("Albert")] lying face-down in the grass, about ten to fifteen yards away. … Officer Patrick then came across [Dunkowski]. She sat slumped over in the front passenger seat with three children laying in the rear seats of the vehicle, which was cluttered with trash, personal items, clothing, food, and debris. As the officers opened the door to speak with [Dunkowski], they immediately smelled a strong odor of urine, soiled diapers, stale cigarettes, and rotting food. It was then that they noticed a fourth child on the floor, completely covered in trash. Officer Weed also discovered a cat in the back trunk of the vehicle.

Alarmed at the children's emaciated state, the officers immediately called Emergency Medical Services ("EMS") to the scene. They testified that the children, later identified as N.D., J.D., L.D. ("Female L.D.") and L.D. ("Male L.D."), looked gravely ill, were covered in feces, urine, and bugs, and appeared malnourished. When EMS arrived, [Dunkowski] refused to let them take the children to the hospital for treatment. Officer Patrick and EMS had no choice but to take protective custody of the children, and they were immediately transported to St. Mary's Medical Center ("St. Mary's").

At St. Mary's, treating physicians made the following assessments: N.D., who suffered from cerebral palsy, was thirteen years old and weighed about ninety pounds. She was nonverbal, had a feeding tube, and started to develop bedsores from remaining in the same position for a significant amount of time. J.D. was four years old and weighed about forty pounds. She was still in diapers as she was not yet trained to go to the bathroom on her own and she needed extensive dental work—a root canal, a crown, and three fillings. Female L.D. was five years old and weighed about forty-eight pounds. She was also still in diapers and needed nine root canals, nine crowns, one filling, and four teeth pulled. She had never been to school. Male L.D. was nine years old and weighed about sixty pounds. He had bilateral clubfeet (meaning his legs and feet were turned inwards) as well as undescended testicles (which normally descend before age one). Both required procedures—several to improve Male L.D.'s clubfeet and one to surgically descend his testicles. Male L.D. also had such a severe, significant amount of dried, caked-on fecal matter on his diaper that when the doctor pulled it back, Male L.D.'s skin became raw and red. Dr. Torradas, the physician who treated the children, testified that, over the course of his lengthy

career, he had never seen anything like what he saw on August 27, 2019.

That same day, [Dunkowski and Albert] spoke with Detective Brian Hyams ("Detective Hyams") and told him that none of the four children found were enrolled in school. Detective Hyams asked if they had any additional children and they provided the names of three more minors in their care. They relayed that one child, R.M., was staying with a friend at the time, but neither [Dunkowski nor Albert] could provide any contact information to get in touch with her. Authorities eventually found R.M. and discovered that she missed almost the entire 2018-2019 school year and had an abscess in her tooth that rendered her unable to chew and required significant dental surgery. …

Shortly thereafter, Detective Hyams discovered that [Dunkowski and Albert] had an eighth minor child—S.D.—they did not mention when previously asked. After some investigation, Detective Hyams located S.D. and [Dunkowski and Albert] agreed to turn her over to authorities in a McDonald's parking lot. S.D. appeared to be very thin, small, disheveled. Her hair was very short as if it wasn't growing, or falling out. Her eyes were puffy underneath. She was very, very quiet, almost like she was lethargic. Doctors later determined she weighed about forty-two pounds. S.D. was unable to walk because her legs were bent and stuck in a seated position. She also still needed diapers—at thirteen years old—because [Dunkowski and Albert] never taught her how to use the bathroom. Authorities immediately took protective custody of S.D. and transported her to St. Mary's with the other children.

From St. Mary's, all five children were transported to St. Christopher's Hospital for Children ("St. Christopher's"). While at St. Christopher's, Bucks County Children and Youth Caseworker Sarah Santin ("Santin") met with the children to investigate allegations of abuse and neglect. Santin noted that N.D., similar to S.D., could not fully extend her legs and had severely chapped lips. She testified that all the children appeared thin, had fine and thinning hair, and had severe dry skin. Two of the children, N.D. and S.D., remained admitted to St. Christopher's for several weeks. S.D. required intensive physical therapy to regain the ability to walk. Ultimately, doctors determined that S.D.'s and N.D's issues were a result of chronic neglect—i.e., neglect over months. Therefore, Santin believed that the children were unsafe

with [Dunkowski and Albert] and petitioned … to take emergency custody of the children. That petition was granted and the children were placed in foster homes.

[Dunkowski and Albert were] charged with six counts of endangering the welfare of children [("EWOC")] and [their] jury trial began on October 4, 2021 and lasted for three days. However, [Dunkowski and Albert] both failed to appear [for the third day of trial], and a bench warrant was issued on October 6, 2021. After defense counsel and the Commonwealth made numerous unsuccessful attempts to contact [Dunkowski and Albert] using all available resources, [the trial court] ruled that the trial would continue in absentia. Later that same day, the jury found [Dunkowski and Albert] guilty of three of the six counts of [EWOC]—all felonies of the third degree.

Over four months later, authorities found [Dunkowski] in Delaware[.]

PCRA Court Opinion, 6/20/2025, at 1-3 (formatting modified, citations omitted).

On June 28, 2022, the trial court sentenced Dunkowski to consecutive terms of two-and-a-half to seven years in prison on two of her EWOC convictions and another consecutive term of three to seven years in prison on her third EWOC conviction, for an aggregate term of eight to twenty-one years of incarceration. This Court affirmed Dunkowski's judgment of sentence on July 7, 2023, *see Commonwealth v. Dunkowski*, 1990 EDA 2022, 2023 WL 4397323 (Pa. Super. July 7, 2023) (non-precedential decision), and our Supreme Court denied her petition for allowance of appeal on December 6, 2023. *See Commonwealth v. Dunkowski*, 308 A.3d 1250, 401 MAL 2023 (Pa. 2023).

… On May 20, 2024, [Dunkowski] filed her first PCRA petition. Counsel was appointed and on August 14, 2024, an amended PCRA petition was filed and raised a claim of ineffective assistance of counsel as trial counsel did not request that [the trial court] determine that [Dunkowski] be [Recidivism Risk Reduction Incentive ("RRRI")] eligible. On August 19, 2024, after the Commonwealth agreed with [Dunkowski]'s allegation of error, [the PCRA court] issued an order granting [Dunkowski]'s amended PCRA petition and amending the judgment of sentence to reflect that [she] is eligible for RRRI program. This order resolved the sole claim in [Dunkowski]'s amended PCRA petition.

On January 24, 2025, [Dunkowski] filed a pro se second [timely] PCRA petition, alleging trial counsel was ineffective for failing to challenge the discretionary aspects of [her] sentence. The Commonwealth filed its response to [Dunkowski]'s petition on February 28, 2025, and on March [11], 2025, [the PCRA court] issued a notice of intent to dismiss pursuant to Pa.R.Crim.P. 907. On March 17, 2025, [Dunkowski] filed an objection to the notice of intent to dismiss. On April 1, 2025, [the PCRA court] formally dismissed [Dunkowski]'s pro se second PCRA petition. On May 7, 2025, [Dunkowski] filed [a pro se] notice of appeal to the Superior Court.[2]

PCRA Court Opinion, 6/20/2025, at 4 (formatting modified).

_____

[2] Our rules of appellate procedure provide that an appeal must be filed within thirty days after entry of the order from which the appeal is taken. Pa.R.A.P. 903(a). Generally, an appellant's failure to timely appeal an order "divests the appellate court of its jurisdiction to hear the appeal." **Commonwealth v. Williams**, 106 A.3d 583, 587 (Pa. 2014)(citation omitted). Under the prisoner mailbox rule, however, "a pro se prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing." **Commonwealth v. Chambers**, 35 A.3d 34, 38 (Pa. Super. 2011) (citation omitted). "[A]ny reasonably verifiable evidence of the date that the prisoner deposits the document with prison authorities" is acceptable to satisfy this rule. **Commonwealth v. Perez**, 799 A.2d 848, 851 (Pa. Super. 2002) (citation omitted). Here, the record reflects that Dunkowski dated the notice of appeal April 15, 2025, and that the notice of appeal envelope is postmarked April 16, 2025. **See** Notice of Appeal, 4/16/2025. Accordingly, we conclude Dunkowski timely filed the notice of appeal from the order dismissing her PCRA petition.

Dunkowski presents the following issues for review:

1. Trial court gave excessive sentencing and abused its discretion failing to consider relevant factors that should have received significant weight. [Dunkowski]'s rehabilitative needs and the mitigating circumstances. Honorable Wallace Bateman Jr states "[Dunkowski]'s most significantly need for rehabilitation." Failing to consider [Dunkowski]'s history and characteristics and no prior convictions sentencing [Dunkowski] outside the guidelines framework is considered a variance. **Irizarry v** [**U.S.**,] 553 U.S. 708. Also failing to consider Dr. Tapper[']s recommendation report for [severe] opioid use disorder of [Dunkowski]. And treatment in the State Drug Treatment Program 61 Pa.C.S. § 4102.

2. Ineffective assistance of counsel on PCRA petition. Counsel Partick McMenamin Jr only filed for [RRRI] Program which was amended without a hearing. [Dunkowski]'s PCRA petition asked for running sentences concurrent and or merger of sentences 42 Pa.C.S § 9765 since crimes arise from a single criminal act and all statutory elements of the offenses are included in the statutory elements of the other.

Dunkowski's Brief at 4 (formatting modified; reordered for ease of review).

"We review the denial of PCRA relief by examining whether the PCRA court's conclusions are supported by the record and free from legal error." **Commonwealth v. Johnson**, 289 A.3d 959, 979 (Pa. 2023). "[W]e defer to the factual findings of the post-conviction court, which is tasked with hearing the evidence and assessing credibility." **Id.** Our standard of review of a PCRA court's legal conclusions, however, is de novo. **Id.**

In her first issue, Dunkowski argues that the trial court imposed an excessive sentence and that it erred in imposing her sentences consecutively as opposed to concurrently. **See** Dunkowski's Brief at 14-17. Specifically, Dunkowski asserts that the trial court failed to consider mitigating factors,

such as her opioid addiction at the time of her offenses, or her rehabilitative needs, including that she was unlikely to reoffend, in determining her sentence. ***See id.***

Dunkowski's claim challenges the discretionary aspects of her sentence. ***See Commonwealth v. Gonzalez–Dejusus***, 994 A.2d 595, 597-98 (Pa. Super. 2010) (explaining that a claim that the trial court erred in imposing consecutive sentences is a challenge to the discretionary aspects of a sentence); ***Commonwealth v. Lee***, 876 A.2d 408, 411 (Pa. Super. 2005) (stating that claim that the trial court erred in imposing an excessive sentence is a challenge to the discretionary aspects of a sentence).  It is well settled, however, that a challenge to the discretionary aspects of a sentence is not cognizable under the PCRA.  ***Commonwealth v. Wrecks***, 934 A.2d 1287, 1289 (Pa. Super. 2007).  On that basis, her first claim fails.

In her second issue, Dunkowski argues that counsel appointed to represent her for her first PCRA petition was ineffective for only arguing that she was RRRI-eligible and for failing to challenge other aspects of her sentence.  Dunkowski's Brief at 13.  Specifically, she asserts that PCRA counsel should have argued that her sentences for her three EWOC convictions should have merged for purposes of sentencing because they all arose "from a single criminal act."  Dunkowski's Brief at 13.  Dunkowski also again argues that PCRA counsel should have argued that the trial court erred in ordering her sentences to run consecutively instead of concurrently.  ***Id.***

> It is well[]settled that counsel is presumed to have been effective and that the petitioner bears the burden of proving counsel's alleged ineffectiveness. To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different.

*Commonwealth v. Reid*, 259 A.3d 395, 405 (Pa. 2021) (quotation marks and citation omitted). Importantly, a PCRA petitioner must address each of these three prongs not only before the PCRA court but also on appeal, as the petitioner bears the burden of pleading that counsel provided ineffective assistance. *Id.* This Court, however, need not review the elements pertaining to claims of ineffective assistance of counsel in any particular order, as the law is clear that "[a] petitioner's failure to satisfy any prong of this test is fatal to the claim." *Id.*

"A claim that crimes should merge for sentencing purposes raises a nonwaivable challenge to the legality of the sentence[.]" *Commonwealth v. Edwards*, 256 A.3d 1130, 1136 (Pa. 2021). Regarding merger and sentencing, section 9765 of the Pennsylvania Judicial Code provides:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all … the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. As our Supreme Court has explained, section 9765 prohibits merger "unless two distinct facts are present: 1) the crimes arise

from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." ***Commonwealth v. Baldwin***, 985 A.2d 830, 833 (Pa. 2009).

The Pennsylvania Crimes Code defines EWOC as follows: "[a] parent, guardian or other person supervising the welfare of **a child** under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of **the child** by violating a duty of care, protection or support."  18 Pa.C.S. § 4304(a)(1) (emphasis added). The Supreme Court of Pennsylvania has opined that "in resolving the issue of whether a single act which injures multiple victims can be the basis for multiple sentences, our task is to simply determine whether the legislature intended that each injury constitute a separate offense." ***Commonwealth v. Frisbie***, 485 A.2d 1098, 1100 (Pa. 1984).  In ***Frisbie***, our Supreme Court determined that convictions for recklessly endangering another person ("REAP") do not merge where the defendant endangered several people by committing a single act.  ***Id.***  The Court explained that the REAP statute provides that, "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place **another person** in danger of death or serious bodily injury."  ***Id.*** (quoting 18 Pa.C.S. § 2705; emphasis in original).

In the instant case, the definition of EWOC similarly refers to endangering the welfare of "a child" or "the child."  ***See*** 18 Pa.C.S. §

4304(a)(1).  Accordingly, pursuant to **Frisbie**, a defendant commits separate offenses of EWOC for each child whose welfare was endangered by his or her conduct and those offenses do not merge for purposes of sentencing.  **See Frisbie**, 485 A.2d at 1100.[3]  We therefore conclude that this claim lacks arguable merit and that PCRA counsel was not ineffective for failing to raise it in her first PCRA petition.  **See Reid**, 259 A.3d at 405.

Finally, regarding her claim that PCRA counsel should have argued that the trial court erred in ordering her sentences to run consecutively instead of concurrently, as established above, Dunkowski's underlying claim challenges the discretionary aspects of her sentence.  **See Lee**, 876 A.2d at 411.  As such, this claim is not cognizable under the PCRA, and we cannot fault PCRA counsel for declining to raise this claim on Dunkowski's behalf in her first PCRA petition.  **See Commonwealth v. Fears**, 86 A.3d 795, 804 (Pa. 2014) (stating that "counsel cannot be deemed ineffective for failing to raise a meritless claim").  Thus, this argument likewise fails.

As Dunkowski has failed to raise a claim that entitles her to relief, we affirm the order denying her second PCRA petition.

Order affirmed.

---

[3]  Moreover, Dunkowski's argument that her abuse and neglect of several of her children over a substantial period constituted a single act is tenuous at best.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/9/2026